847 So.2d 886 (2002)
Francis Eugene WHITE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01259-COA.
Court of Appeals of Mississippi.
December 3, 2002.
Rehearing Denied February 4, 2003.
Certiorari Denied June 12, 2003.
*888 Jim Davis, Moss Point, attorney for appellant.
Office of the Attorney General, by Scott Stuart, attorney for appellee.
Before SOUTHWICK, P.J., BRIDGES and MYERS, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. Francis Eugene White was convicted of aggravated assault by a circuit court jury. On appeal, he argues prejudicial error in statements made by the prosecutor during opening and closing arguments. White also asserts that his counsel was ineffective, and that certain defense witnesses were improperly excluded. We find no error singly or cumulatively, and affirm.

FACTS
¶ 2. White denies that he was the person who in disguise committed this assault. Nonetheless, the following describes the testimony and inferences that were consistent with the verdict of guilt. On October 22, 1996, the sixty-two year old defendant traveled from his home in Pascagoula to the Long Beach dwelling of his estranged wife, Carol. White was disguised as a telephone repairman, wearing a hard hat and false mustache, and carrying a wire *889 cage box with tools. White cut the cable television wire connected to the house, presumably mistaking it for the telephone line.
¶ 3. White's wife Carol was having an affair with Bill Ford. Ford was the only person in the house when White arrived. Duped by White's disguise, Ford allowed the "repairman" inside. After White entered, Ford recognized him. White then said, "You know who I am, don't you?" before shooting Ford in the abdomen with a gun hidden in the tool bag. Ford fell to the floor, feigning death. White fired three more shots, injuring Ford's hand and ear, before fleeing. Ford, fearing another assault, went to the door and locked it. White may have heard the noise made by the lock and began to kick or beat on the door to regain entry. Ford escaped through the patio door, scaled a six foot fence, and collapsed in a neighbor's driveway. Police apprehended White at a routine traffic stop. White posted bond a week later and fled the jurisdiction.
¶ 4. White was returned to Mississippi. His trial for aggravated assault began in December 2000, but a mistrial was declared when a witness inadvertently mentioned White's connection to his wife's murder. A second trial took place in mid-May 2001. White was convicted of aggravated assault. His appeal has been deflected here.

DISCUSSION

1. Prosecutorial misconduct
¶ 5. The prosecution during opening and closing arguments mentioned bloodstains of the victim that allegedly were found on White's shoes. Investigators from the Mississippi Crime Lab were able to obtain only enough sample material to type and match for DNA Whatever the substance was, it contained the victim's DNA While tests proved that these small stains on White's shoes may have been blood, the results were inconclusive. Similarly, the laboratory that conducted the DNA testing was unable to verify the source material as blood. It obviously was some bodily fluid from Ford.
¶ 6. White filed a motion in limine prior to the first trial that sought to prohibit the State from stating "that the DNA evidence found on the Defendant's shoes was blood because no scientist or doctor found this DNA evidence to be blood." White was able to obtain a ruling only that the serology witnesses could not state categorically that the substance was blood. The court restated its prior holding during pre-trial motions before the second trial:
THE COURT: [The serologist] can testify as to her findings on serology, that it was consistent with what's in her report indicating the possible presence of blood being identified on the left shoe. And I think that she had stated that she was not able to definitively make that determination because she was afraid that she would use the rest of the sample and there would not be any left for DNA analysis. So I think she isthat's why I think she can testify as to her findings and why she did not make a further definitive finding. That's allowed.
¶ 7. It is obvious that White wished for all references to blood to be barred. Instead, he got only this limited ruling that the serologist's findings could be admitted that the substance contained Ford's DNA and that it may have been from blood.

A. Opening statements
¶ 8. During opening statements as the second trial began, the prosecutor stated this:
But Long Beach Police, they get his shoes. What does the Crime Lab find *890 on the shoes, but some blood. And they take that and they send it to ReliaGene Technology. And ReliaGene Technology performed DNA, and guess whose blood it is. It's the victim's....
¶ 9. During these comments, White made no objection. Though he now asserts that the statements violated the order limiting references to blood, that apparently was not the position taken at trial. If these statements were violative, the failure to object prevented the trial court from remedying the error. A contemporaneous objection permits the trial court to act as is necessary to cure the problem and avoid the needless expense and delay of a retrial. Johnson v. State, 477 So.2d 196, 210 (Miss.1985). For this reason, an appellate court will not consider for the first time on appeal a claim of prejudice arising during the trial since the trial court was not given the opportunity to resolve it after a timely objection. Colburn v. State, 431 So.2d 1111, 1113-14 (Miss.1983).
¶ 10. Procedural waiver may be set aside when a fundamental constitutional right is threatened. Conerly v. State, 760 So.2d 737, 740 (Miss.2000). However, opening and closing arguments are not evidence and are not governed by evidentiary standards. "The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." Sheppard v. State, 777 So.2d 659, 661 (Miss.2000). Here, we cannot find that such prejudice arose, particularly as White incorporated the evidence into his own defense, as will be discussed shortly.
¶ 11. Whether these comments went beyond proper argument is not altogether clear. Certain witnesses were allowed to refer to their conclusions about stains on White's shoes and to mention that the substance may have been blood. The presence of blood was unsubstantiated, but potential. The question becomes whether a prosecutor could argue as fact that the only reasonable explanation from the evidence was that the stain must have been blood.
¶ 12. There is wide latitude for counsel in both opening and closing arguments, expanding beyond mere facts and proof to include such "deductions and conclusions [one] may reasonably draw therefrom, and the application of the law to the facts." Wells v. State, 698 So.2d 497, 506 (Miss.1997). Here, a reasonable inference existed that spots found on White's shoes which contained DNA matching the victim were in fact blood. Substantial DNA evidence was offered at trial. Pictures depicting the crime scene revealed large amounts of blood. While the serologist could not offer the potentially damning testimony that the stains found on White's shoes were composed of blood, the evidence certainly was consistent with the inference argued by the State.
¶ 13. Whether the State went beyond the logical reach of the order regarding this evidence is ultimately not necessary for us to decide. It is enough for us to conclude, and we do, that no fundamental right of the defendant was violated when the State argued what the jurors quite likely would have inferred anyway.

B. Closing arguments
¶ 14. White submits that the State engaged in prosecutorial misconduct during closing arguments. White raises three areas for our review: the references to blood found on White's shoes, the driving times between various points, and a phone call *891 made from Gulfport found in White's phone record.
¶ 15. Here too, White's counsel failed to object. A defense counsel must "raise a proper objection when the offensive language is uttered or waive appellate review of the issue." Foster v. State, 639 So.2d 1263, 1288-89 (Miss.1994). Seeking for potential plain error, we review each issue.
¶ 16. A closing argument is intended to summarize in a fair even if partisan fashion all the relevant evidence that would support a guilty verdict. Sheppard, 777 So.2d at 661. Regarding the State's closing remarks on the bloodstains, nothing in this argument differentiated it from the State's opening remarks on the same subject. Still, we find no reversible error. Next, White had relied substantially on an alibi. The alibi included the impossibility of his presence at the crime scene due to distance and driving times from his supposed location at a similar time as the assault. There was conflicting testimony regarding the length of time necessary to travel from Long Beach to Moss Point. Nevertheless, testimony was offered on behalf of the State that the drive took as little as twenty-six minutes. Other evidence, not mentioned by the prosecution in its closing, suggested it would have taken longer. Either party may argue from evidence facts favorable to its case even if the record reflects other facts which contradict them. Evans v. State, 725 So.2d 613, 670 (Miss.1997). Here, jurors were charged with reviewing the conflicting testimony, and it was their decision as to witness credibility and whom to believe. Simmons v. State, 805 So.2d 452, 483 (Miss.2001). It was not error for the prosecutor to argue the evidence most favorable to guilt.
¶ 17. Finally, there was a phone record discussed during trial. White's essential point is that no one referred to a specific entry on the phone records during the testimony. Therefore, he alleges that it was improper for the prosecution to comment on it. However, White offered the entire bill with all the telephone calls for that time period into evidence. He relied on it substantially to corroborate his alibi. In her closing argument, the prosecutor called the jury's attention to a phone call which tended to discredit White's theory.
¶ 18. It is error to argue facts prejudicial to the defendant which are not in evidence or reasonably inferable from facts in evidence. Blue v. State, 674 So.2d 1184, 1214 (Miss.1996), overruled on other grounds in King v. State, 784 So.2d 884, 889-90 (Miss.2001). Those are not the arguments that the State made. Rather, it was commenting on evidence before the jury and which was available to it. In offering the phone bill as evidence, White ran the risk that facts damaging to his cause could be argued from it. There was no necessary predicate that someone had drawn a witness's attention to that part of the exhibit before closing argument could use it.

C. Ineffective assistance of counsel
¶ 19. White acknowledges that the failure timely to object during either opening statement or closing argument presents a procedural bar to the relief sought. He therefore asserts that such failure constituted ineffective assistance of counsel. Here, White's counsel not only failed to object, he affirmatively incorporated the evidence into his defense. This appears to be trial strategy, not professional shortcoming. Handley v. State, 574 So.2d 671, 684 (Miss.1990).
¶ 20. White established through multiple witnesses his theory that blood from the scene may have gotten onto the clothes *892 of law enforcement officials and transferred to White during a gun residue test performed while he was in custody. White's closing argument expressly advanced this theory. "Easily could one of these officers stepped on the blood and then inadvertently transferred it.... There wasn't any blood found on my client, except on the top, I point out, the top of his shoes."
¶ 21. In order to demonstrate ineffective assistance of counsel, White must show a deficiency in his attorney's performance which prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). White's only contention is the failure contemporaneously to object to the prosecutor's arguments. We have shown the defects in that allegation of default already, and find no ineffective assistance to have arisen. Neither do we find prejudice.

2. Exclusion of defense expert witnesses
¶ 22. Prior to trial, White offered two defense experts. The first, a chiropractor, offered to testify that White was physically incapable of kicking the door in a manner consistent with the markings found on it in the assault on Ford. The second witness was characterized as an "eyewitness identification" specialist, offering to testify that Ford's impressions and recollections of his assailant were insufficient to implicate White. The lower court excluded both witnesses.
¶ 23. A trial judge has considerable discretion regarding relevance and admissibility of evidence. We will not reverse unless an abuse of this discretion results in prejudice to a defendant. Weeks v. State, 493 So.2d 1280, 1284 (Miss.1986).
¶ 24. White provided discovery regarding the chiropractor on the Friday preceding the Monday trial date. White intended the expert's testimony to demonstrate that White was physically unable to kick the door in and assault Ford. The trial court found that White had medical records suggesting this diagnosis as early as April 1997, and an obligation to prepare such a defense before the eve of trial. The court found that the prosecution did not have sufficient opportunity to meet the evidence. The State's opportunity for rigorous cross-examination would not likely have sufficed.
¶ 25. The trial court and the State treated the matter as a discovery violation. We agree. The court was convinced that the matter of White's alleged infirmity was known well in advance of the Friday at 3:00 P.M. before the start of trial on the following Monday. Once trial commences, there is a procedure by which the surprised party may examine the physical evidence or question the new witness and determine whether unfair surprise or undue prejudice would result from permitting the new evidence. If so, the court should, "absent unusual circumstances, exclude the evidence or grant a continuance" to permit preparation of responsive evidence. URCCC 9.04 I. When a party before trial becomes aware of a discovery violation, the court may order the discovery of the evidence, grant a continuance, "or enter such other order as it deems just under the circumstances." Id.
¶ 26. On the eve of this trial, the judge entered the order that he deemed just. White had been under indictment for almost four years. The alleged diagnosis of this debilitating condition was of similar vintage. A substantial delay in the trial would have resulted, as the State's own expert would have had to be selected, would have needed to examine White, and then reached conclusions. We find it within the trial judge's discretion to exclude this evidence.
*893 ¶ 27. White also challenges the lower court's exclusion of a proffered "eyewitness identification" expert prior to trial. The court excluded the proposed testimony, citing both timeliness concerns and that he found the evidence did not rely on proven "scientific" principles.
¶ 28. Before expert testimony can be introduced, the science about which that person will opine must be shown to be generally accepted. Crawford v. State, 754 So.2d 1211, 1216 (Miss.2000). Three factors have been identified in considering expert opinion evidence:
(1) whether the subject matter of the proffered testimony is of the sort on which expert opinion evidence will assist the finder of fact; (2) whether the area of expertise is scientifically established so that valid opinion may be produced within that area; and, (3) finally, whether the witness is qualified.
McCaffrey v. Puckett, 784 So.2d 197, 201 (Miss.2001).
¶ 29. The trial judge was disinclined to allow the testimony under both the first and second factors. The judge seemed especially concerned that notice of this proposed testimony was being offered on the eve of trial. We have been shown nothing suggesting that the science about which this expert was going to testify is generally accepted. The merit of refusing this evidence because of the dilatoriness in presenting it is supported by the same arguments as we have discussed regarding the chiropractor who was not allowed to testify. We find that both witnesses could be excluded.

3. Cumulative effect
¶ 30. White finally submits that should his assignments of error fail individually, we must review them again collectively, analyzing their cumulative effect. It is true that an appellate "Court may reverse a conviction and sentence based upon the cumulative effect of errors that independently would not require reversal." Genry v. State, 735 So.2d 186, 201 (Miss. 1999). We must consider whether the combined errors are greater than the sum of their parts, depriving White of a fundamentally fair and impartial trial. Wilburn v. State, 608 So.2d 702, 705 (Miss.1992).
¶ 31. Taking this longer view of White's claim, we remain convinced that he was afforded a fair trial. Taking the cumulative effect of his arguments, we find no basis to reverse.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF 20 YEARS AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS HEREBY AFFIRMED. COSTS ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.