840 So.2d 774 (2003)
Floyd D. RASH, Appellant
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01318-COA.
Court of Appeals of Mississippi.
March 18, 2003.
Allan D. Shackelford, Clarksdale, for appellant.
Office of the Attorney General by Charles W. Maris, for appellee.
EN BANC.
*775 KING, P.J., for the Court.
¶ 1. Floyd D. Rash was found guilty by the Circuit Court of Coahoma County of armed robbery. He was sentenced to a term of life imprisonment, as an habitual offender in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction, Rash has appealed and raised the following issues:
I. Did the policeman's testimony constitute expert testimony?
II. Whether the trial court erred in allowing Officer Salley to refer to the store clerk as "a victim."
III. Whether the verdict was against the overwhelming weight of the evidence.

FACTS
¶ 2. On November 19, 2000, Yvonne Michelle Young was working as a cashier at Bull Market # 30, a convenience store in Clarksdale. At approximately 3:30 a.m., Ms. Young, who was alone in the store, heard a knock on the drive-through window. Ms. Young saw an individual who was a regular customer. Although she did not know his name at the time, the individual was later identified as Rash.
¶ 3. Rash asked for three packages of Newport cigarettes. After retrieving the cigarettes, Ms. Young turned back to the window and saw Rash pointing a silver pistol at her. Young testified to being really afraid of guns, and really upset when the gun was pointed at her. According to Ms. Young, Rash said, "Michelle, I'm robbing you." Ms. Young indicated that she stepped back, "let him come to the window, and he opened the cash register." Ms. Young stated that Rash retrieved "some fives and some ones" from the cash register. Rash then jumped back out of the window and told Ms. Young not to call anyone or tell anyone that he had been there that morning.
¶ 4. Immediately after the incident, Ms. Young contacted the police. According to Officer Willie Hudson of the Clarksdale Police Department, upon arriving at the scene, he found Ms. Young in the store alone, "crying and upset, hysterical and scared." Officer David Rowsey of the Clarksdale Police Department who was in the area and received a call that the Bull Market store had been robbed and that the suspect was "a black male wearing dark colored pants with a green jacket." Officer Rowsey saw a person in the area who fit that general description. He stopped the individual and asked him his name and why he was standing near a shed. The officer stated that the individual "was breathing real hard and his nose was running as if he had been running." As a safety measure, the officer patted the individual down and found money balled up in his front pants pockets.
¶ 5. Officer Rowsey had Officer Brenda Herman transported the suspect to the store where he was identified by Ms. Young as the robber. Ms. Young later identified Rash from a photographic line-up as well. At the jail, Officer Chris Salley removed approximately fifty-two dollars (in ones and fives) from Rash's pockets.
¶ 6. On June 6, 2001, Rash was indicted for armed robbery pursuant to Mississippi Code Annotated Section 97-3-79 (Rev. 2000), as an habitual offender. At trial on July 16, 2001, Rash was found guilty of armed robbery. On July 19, 2001, Rash was sentenced to a term of life imprisonment in the custody of the Mississippi Department of Corrections.

ISSUES AND ANALYSIS

I.

Did the policeman's testimony constitute expert testimony?
¶ 7. Rash contends that the trial court erred by allowing the testimony of *776 one of the police officers who was not qualified to give expert testimony. He maintains that no attempt was made to qualify Officer Salley as an expert either by training or experience, so as to allow him to give an opinion as to why yellow markings which were on the bills at the time of the arrest were no longer present on the bills at trial. Rash contends that such testimony is not subject to lay opinion testimonies under Rule 701 of the Mississippi Rules of Evidence, and is appropriately covered by Rule 702, which addresses expert testimony.
¶ 8. The admissibility of evidence rests within the trial court's discretion. Crawford v. State, 754 So.2d 1211(¶ 7) (Miss. 2000). Unless its judicial discretion is abused, this Court will not reverse its ruling. Id.
¶ 9. Officer Salley's testimony regarding the yellow marks on the bills was as follows:
Q. What, if anything unusual, did you observe on the one-dollar bills or the five-dollar bills?
. . .
BY MR. SHACKELFORD (for the Defendant):I'm going to object to this because I think the bills themselves speak for themselves. If in fact they are the same.
BY THE COURT: Well, I'm going to overrule it and let him testify as to what he observed. The question was what did he observe unusual about the one-dollar bills.
. . .
A. I observed 32 just regular one-dollar bills. Then there were five five-dollar bills. On the five-dollar bills I observed yellow markings scribbled across the front of every one of the five-dollar bills.
Q. Through your experience as an investigator, were you able to determine what type of markings were on the five-dollar bills?
A. Yes, sir.
Q. What was that?
A. They make counterfeit money pens that are used in banks and in stores like this to mark the bill to see if it's a counterfeit bill or if it's a good bill. If it is a good bill it leaves a yellow mark because of the paper that's used. If it is a counterfeit bill then it will leave a brownish black mark on the bill so that the cashier can tell if it is a good bill or not. And these all had the yellow markings across the front.
. . .
Q. Can you explain the difference between what you testified you saw at the point of taking them from the defendant until today?
A. Yes, sir. I can. The yellow mark faded away. I didn't understand why. I opened my case file, looked in, and the yellow mark is gone off of all the five-dollar bills. So I investigated further and found thatwhich I didn't know at this timethe yellow mark fades away.
BY MR. SHACKELFORD: I object. He is beyond his scope of expertise admittedly and I object to his opinion as to what happens.
BY THE COURT: He is not to render an opinion but he can testify as to what his investigation revealed. I understand he phrased his answer "I investigated further." I can't remember what was said after that. But
BY MR. SHACKELFORD:I also object on hearsay, Your Honor, under the Bridgeforth case.
BY THE COURT: All right. The objection is overruled. Phrase your question carefully, Counsel.

*777 BY MR. HALL: Yes, sir. May the witness continue to answer the question?
BY MR. SHACKELFORD: May I have a continuing object [sic], too, Your Honor?
BY THE COURT: Yes, Mr. Shackelford. Your object [sic] is noted. He can answer as to what he learned from his investigation as to the disappearance of the yellow marks.
. . .
A. During, my investigation I learned that because it is illegal to destroy U.S. currency, if you leave a permanent mark on this bill thenenough of them, you're destroying the currency. So by leaving this mark that fades away, you're not destroying the currency. It fades away and goes back to its regular state without being damaged.
¶ 10. Clearly this testimony requires specialized knowledge, which required a M.R.E. 702 expert opinion. To allow Officer Salley to testify to that information was to allow improper hearsay evidence. Graves v. State, 761 So.2d 950(¶ 11) (Miss. Ct.App.2000).
¶ 11. While holding the admission of improper expert testimony from Officer Salley was error, this Court is compelled to rule that it was harmless error.
¶ 12. Even if Officer Salley's testimony regarding the yellow markings on the money had been excluded, there was sufficient evidence of Rash's theft of the money, as to convince this Court that it would not have changed the outcome of the trial. DeSalvo v. State, 776 So.2d 704 (¶ ¶ 16-18) (Miss.Ct.App.2000).

II.

Whether the trial court erred in allowing Officer Salley to refer to the store clerk as "a victim."
¶ 13. Rash contends that the trial court erred by allowing Officer Salley to call Ms. Young, the store clerk, "a victim" during his testimony. He maintains that such testimony was held inadmissible in Bridgeforth v. State, 498 So.2d 796 (Miss. 1986). Rash asserts that this characterization is prejudicial since "there is a grave question as to whether the clerk who was allegedly robbed, gave up money in fear or was part of the crime."
¶ 14. A review of the transcript reveals Officer Salley's testimony during direct examination as follows:
Q. Now, Investigator Salley, who, if anyone, do you remember was on the scene when you arrived at the Bull Market?
A. When I arrived there, Ms. Young, the victim of the robbery, was there. And
BY MR. SHACKELFORD:I'm going to object to "the victim of the robbery." That is a question for the jury, whether it was a victim or not.
BY THE COURT: Well, sir, I think that, while you may be technically correct, I'm going to overrule the objection. He can testify as to who the person was that was robbed.
¶ 15. Prior to receipt of this testimony from Salley, the trial court had heard the testimony of Young that she was robbed by Rash. Where this testimony was already placed in the record through the direct testimony of Ms. Young, there was no objectionable hearsay. Stevens v. State, 806 So.2d 1031 (¶ ¶ 147, 148) (Miss. 2001).

III.

Whether the verdict was against the overwhelming weight of the evidence.
¶ 16. Rash contends that the verdict was against the overwhelming weight *778 of the evidence and warrants a new trial. He maintains that although the store clerk claimed to be in fear, she told the individual "to come in and get the money." Rash alleges that this admission negates proof of the element that "property must be taken from the alleged victim against the alleged victim [sic] against the victim's will." Further, Rash alleges that Ms. Young's testimony regarding how the individual entered the store and what he was wearing is inconsistent. Rash maintains that Ms. Young's identification of the individual was not from a line-up but "from the presentation to her of a man wearing the same color jacket as her assailant," which Rash contends is "suggestive enough to invite identification of one not guilty." This assertion concerns the weight of the evidence presented.
¶ 17. Regarding issues involving the weight of the evidence, the Mississippi Supreme Court states the following:
[T]his Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict.
Herring v. State, 691 So.2d 948, 957 (Miss. 1997) (citations omitted).
¶ 18. Ms. Young testified that although she did not know him by name, she recognized Rash as one of her regular customers. She also stated that she was in fear at the time of the robbery and she did tell him to "come in and get the money" so that his image would be captured on the surveillance camera. While Rash claims that the weight of the evidence is inconsistent with the jury's verdict, it is left to the jury to resolve all conflicts in evidence presented at trial. Craig v. State, 777 So.2d 677 (¶ 10) (Miss.Ct.App.2000). We find that the verdict is consistent with the evidence and a new trial is not warranted.
¶ 19. THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF LIFE AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. SENTENCE IMPOSED TO RUN CONSECUTIVELY TO ANY AND ALL PREVIOUS SENTENCES. COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, AND CHANDLER, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.