[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1171 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1172 
¶ 1. David Marbra was convicted of murder in the Jackson County Circuit Court and sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. Aggrieved, he asserts the following issues on appeal:
 I. WHETHER THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY AND EVIDENCE OF STATE'S WITNESS STEVE BYRD OF THE MISSISSIPPI CRIME LAB, FIREARMS SECTION, AS AN EXPERT WITNESS.
 II. WHETHER THE TRIAL COURT ERRED IN ALLOWING, OVER OBJECTION, THE TESTIMONY OF STATE'S WITNESS, SEAN MARBRA, AS TO ALLEGED PRIOR BAD ACTS BY THE DEFENDANT.
 III. WHETHER THE TRIAL COURT ERRED IN ALLOWING, OVER OBJECTION, THE STATE'S EXPERT WITNESS, DR. PAUL McGARRY'S TESTIMONY AS TO HIS MEDICAL CONCLUSION, SAID OPINION HAVING NOT BEEN PREVIOUSLY DISCLOSED TO THE DEFENDANT CONTRARY TO THE ORDER OF THE TRIAL COURT.
 IV. WHETHER THE TRIAL COURT ERRED IN ALLOWING, OVER OBJECTION, THE OPINION TESTIMONY OF STATE'S WITNESS, OFFICER BRETT TILLMAN, WITHOUT PRIOR DESIGNATION OF TILLMAN AS AN EXPERT AND DISCLOSURE OF HIS OPINIONS.
 V. WHETHER THE TRIAL COURT ERRED IN REFUSING THE DEFENDANT'S PROFFERED JURY INSTRUCTION D-5, SAID INSTRUCTION GIVING A JUDICIAL DEFINITION OF REASONABLE DOUBT.
 VI. THE VERDICT OF THE JURY IN THIS CASE IS THE RESULT OF QUESTIONABLE EVIDENCE, BIAS AND PASSION OF THE PART OF THE JURY, CONTRARY TO THE LAW OF THIS STATE AND REQUIRES REVERSAL.
 ¶ 2. Finding no error, we affirm.
 FACTS ¶ 3. On December 26, 2000, David and Barbara Marbra spent the day at home with their children, Sean and Charissa. Most couples occasionally enter into an argument over trivial matters. Likewise, David and Barbara engaged in a verbal conflict. The couple shut themselves in their bedroom for privacy. However, David and Barbara's argument escalated dramatically and crossed the proverbial line when the conflict became physical.
 ¶ 4. All the while, Sean was sitting on the back porch listening to music. When *Page 1173 
he heard "bumping" coming from the house he decided to determine the cause. As he made his way inside to investigate, his sister Charissa met him at the back door. Charissa asked Sean to find out what was causing the noises, but added that she thought their parents were arguing. Sean went to the bedroom and tried to enter, but David prevented his entry and told him to call 911 because an accident happened. Emergency response arrived and attempted to save Barbara's life, but Barbara suffered from a single gunshot wound to her head. The wound proved too traumatic for treatment and Barbara died as a result.
 ¶ 5. Sergeant Brett Tillman, an investigator with the Jackson County Sheriff's Office, was the first investigator on the scene. The first officer on the scene, Officer William Brister, tendered a .22 caliber Derringer to Sergeant Tillman's possession. David identified the .22 pistol as his pistol, as well as the weapon that caused Barbara's death. Following the standard Miranda
warnings, David gave a statement.
 ¶ 6. According to David, the pistol accidentally discharged. David explained that he and Barbara were in the midst of a physical conflict. David reported that he struck Barbara in the head with a .22 Derringer pistol. However, when the barrel came in to contact with Barbara's head, the pistol fired and killed Barbara. David contended that the pistol was not cocked and that he did not hold the pistol in the usual manner, that is, by the handle. Rather, David held the pistol by the barrel in a manner that caused the barrel to point down. His explanation notwithstanding, David was arrested and charged with murder.
 ¶ 7. While in custody, David again waived his Miranda rights and recorded his statement on videotape. He repeated his version of events and related how he held the pistol when he struck Barbara and continued to claim that the pistol discharged accidentally.
 ¶ 8. Following the grand jury's indictment, David filed a motion for and was granted an order in which the State was directed to provide David's counsel with the designation of any expert it intended to call in their case-in-chief at least sixty days before trial. Further, the State should also provide that witness's qualifications, any opinion evidence that witness was expected to testify to, and the basis for that opinion.
 ¶ 9. Trial on the matter took place on July 16 and 17, 2003 before the Circuit Court of Jackson County. Ultimately, David was convicted and given a life sentence in the custody of the Mississippi Department of Corrections. David filed motions for directed verdict and for a new trial. The circuit court denied those motions. Other facts will be discussed in greater depth as necessary.
 ANALYSIS
I. DID THE TRIAL COURT ERR IN FAILING TO SUSTAIN THE DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY AND EVIDENCE OF STATE'S WITNESS STEVE BYRD OF THE MISSISSIPPI CRIME LAB, FIREARMS SECTION, AS AN EXPERT WITNESS?
 ¶ 10. Sergeant Tillman collected evidence and sent it to Steve Byrd, a firearms specialist employed by the Mississippi Crime Lab. Sergeant Tillman also tendered David's statement regarding the manner in which the pistol discharged. Based on that information, Byrd attempted to recreate the scenario to determine whether he could cause the pistol to discharge according to David's version of *Page 1174 
events. Although Byrd attempted to cause the pistol to discharge by holding it similarly and striking a hard surface, he could not cause the pistol to fire according to David's contention. He recorded his findings and reported that the pistol did not fire under the requested test conditions.
 ¶ 11. On July 15, 2003, the State faxed David's counsel an amended notice of witnesses. Steve Byrd was listed as a potential witness. David filed a motion to exclude Byrd's testimony on the basis that Byrd was not timely listed as a potential expert witness. The State pointed out that Byrd's report was submitted more than six months prior to trial and that Byrd would not be called to testify as an expert witness. Rather, Byrd would testify that he tested the .22 Derringer and that he could not cause the pistol to fire. The lower court overruled David's motion to exclude and added a caveat, Byrd could testify, but not as an expert. Also, Byrd could testify only to the information contained within his report.
 ¶ 12. Byrd testified that he was asked to attempt to reproduce circumstances to determine if he could cause David's pistol to discharge. He concluded that he could not cause the pistol to discharge accidentally in the way that David claimed. He demonstrated how he attempted to cause the pistol to fire. He also demonstrated the particular manner in which he was requested to hold the pistol. Byrd did not stray from the information contained in his report.
 ¶ 13. After Byrd's testimony, David moved for mistrial, but the lower court denied that request. Following trial, David unsuccessfully moved for a new trial and argued that Byrd should not have been allowed to give his expert opinion due to untimely discovery. On appeal, David repeats his allegation that the trial court committed reversible error because Byrd testified as an expert witness although the State did not timely disclose Byrd's expert status in discovery.
 ¶ 14. The admissibility of evidence rests within the trial court's discretion. Rash v. State, 840 So.2d 774 (¶ 8) (Miss.Ct.App. 2003). We will not reverse unless an abuse of this discretion results in prejudice to a defendant. White v. State,847 So.2d 886 (¶ 23) (Miss.Ct.App. 2002).
 ¶ 15. Byrd was not qualified by the court as an expert. He could only submit opinion testimony under Mississippi Rule of Evidence 701. Rule 701 provides for limited admissibility of lay opinion testimony. Such evidence is limited to those opinions or inferences which are rationally based on the perception of the witness and helpful to the clear understanding of his testimony or the determination of a fact in issue. M.R.E. 701. Rule 701 does not open the door to any and all opinion testimony. Jacksonv. State, 551 So.2d 132, 144 (Miss. 1989). A lay witness may not express an opinion on an ultimate issue. Id. A lay witness can only give an opinion that is based upon his personal perceptions, and that will help the jury fairly resolve a controverted, material fact. Id. (citing Dale v. Bridges, 507 So.2d 375,378 (Miss. 1987)).
 ¶ 16. After reviewing the record, we conclude that Byrd's testimony was properly allowed. It is true that Byrd's name was not provided as an expert witness, but neither was he called to testify as such. The State provided David's counsel with Byrd's report on May 16, 2002. Thus, David's counsel was already aware of the results of Byrd's experiment. Byrd confined his testimony to the information in his report. Byrd's testimony and report was that, based on Byrd's experiment, David's pistol did not fire according to David's explanation. Moreover, the record reflects that, contrary to David's assertions, Byrd did not testify to an expert *Page 1175 
opinion, nor did he enter an opinion at any point. That being said, Byrd's testimony is not so prejudicial, under the context, to reverse on appeal. Accordingly, this issue lacks merit.
II. DID THE TRIAL COURT ERR IN ALLOWING, OVER OBJECTION, THE TESTIMONY OF STATE'S WITNESS, SEAN MARBRA, AS TO ALLEGED PRIOR BAD ACTS BY THE DEFENDANT?
 ¶ 17. Sean Marbra, David and Barbara's son, testified for the State. He testified that he was on the back porch on December 26, and that he heard "bumping" sounds coming from his parents bedroom, and that he called 911 at David's request. Sean also testified that David engaged in a ten-year pattern of violence against Barbara.
 ¶ 18. David consistently objected to the admission of Sean Marbra's testimony regarding David and Barbara's pattern of domestic violence during the marriage. In the hearing on David's motion to exclude, David argued that Sean's testimony regarding past domestic violence was inadmissible as improper proof of David's character. The circuit court determined that Sean's testimony was admissible to show lack of accident. On appeal, David complains that the circuit court should not have allowed Sean's testimony on David's character based on Mississippi Rules of Evidence 403 and 404(b). Furthermore, David argues that the acts of domestic violence Sean testified to were not close enough in time to be admissible because either a single transaction or a similar occurrence close in time must be shown to allow admission of proposed evidence to the jury. Duplantis v. State,644 So.2d 1235 (Miss. 1994).
 ¶ 19. The admissibility of evidence rests within the trial court's discretion. Rash v. State, 840 So.2d 774 (¶ 8) (Miss.Ct.App. 2003). We will not reverse unless an abuse of this discretion caused David prejudice. See White v. State,847 So.2d 886 (¶ 23) (Miss.Ct.App. 2002).
 ¶ 20. Evidence of a person's character or a trait of his character is generally not admissible. M.R.E. 404. However, evidence of other crimes, wrongs, or acts is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Moss v. State,727 So.2d 720 (¶ 18) (Miss.Ct.App. 1998). And while one must demonstrate a time frame between one occurrence and another, inMoss the State presented evidence that the defendant therein abused his wife prior to killing her. Moss held that such evidence was admissible to show a continuing pattern of violence.
 ¶ 21. Sean testified to observing a continuing pattern of beatings over a ten year period. From the time he was nine years old, Sean was out of the home for less than one year. The testimony assigned as error here was not introduced to prove David's character, but to show the escalating level of violence, culminating in Barbara's murder. Thus, the State sought not to prove the pattern of violence through isolated incidents, but through a continued pattern, inseparable from the whole. The evidence was admissible to show lack of accident and a common scheme or plan by David to physically abuse Barbara.
 ¶ 22. We must still consider Mississippi Rule of Evidence 403. Rule 403 requires the consideration of whether the probative value of proposed evidence is substantially outweighed by the danger of unfair prejudice. Id. at (¶ 20). In this sense Rule 403 is the ultimate filter through which all otherwise admissible evidence must pass. Id. (quoting Jenkins v. State,507 So.2d 89, 93 (Miss. 1987)).
 ¶ 23. Naturally, this evidence was prejudicial to David, inasmuch as any effective evidence presented in a prosecutorial setting *Page 1176 
is prejudicial. However, the probative value of the evidence outweighs its prejudicial effect. David's defense was that he accidentally shot Barbara. Sean's testimony regarding David and Barbara's history of domestic violence contradicted David's defense by showing lack of accident and a common scheme of physical violence. As such, there was no error.
III. DID THE TRIAL COURT ERR IN ALLOWING, OVER OBJECTION, THE STATE'S EXPERT WITNESS, DR. PAUL McGARRY'S TESTIMONY AS TO HIS MEDICAL CONCLUSION, SAID OPINION HAVING NOT BEEN PREVIOUSLY DISCLOSED TO THE DEFENDANT CONTRARY TO THE ORDER OF THE TRIAL COURT?
 ¶ 24. Dr. Paul McGarry, a forensic pathologist, testified for the State. Dr. McGarry testified that he performed Barbara's autopsy, from which he determined that a small-caliber firearm, probably .22 or .25 caliber, created the head wound that killed Barbara. Further, the wound was a contact wound, meaning the weapon was fired near, if not touching, Barbara's skin.
 ¶ 25. David objected during Dr. McGarry's testimony and argued that Dr. McGarry's testimony was not within the province of Dr. McGarry's autopsy report. The trial court overruled David's objection. David put forth the same argument in his motion for a new trial, when he argued that a new trial was necessary because Dr. McGarry's medical conclusion was not disclosed prior to trial. Similarly, the circuit court refused to grant David's motion.
 ¶ 26. On appeal, David stipulates that Dr. McGarry's testimony regarding his findings is admissible. However, David contends that the trial court should not have allowed Dr. McGarry's testimony regarding his medical conclusions as to how Barbara died. He argues that the State failed to disclose this information prior to trial.
 ¶ 27. The admission of expert testimony is addressed to the sound discretion of the trial judge. Puckett v. State,737 So.2d 322 (¶ 57) (Miss. 1999). If we conclude that the admission of expert testimony was arbitrary and clearly erroneous, amounting to an abuse of discretion, we will reverse. Id.
 ¶ 28. The record shows that Dr. McGarry's testimony was based on his autopsy report, provided in discovery. David's counsel accepted Dr. McGarry as an expert witness and cross-examined Dr. McGarry. During that cross-examination, David's counsel did not point out any variations between Dr. McGarry's testimony at trial and the conclusions within the autopsy report. Our examination of the record indicates that there were not any differences in Dr. McGarry's autopsy report and his trial testimony. This issue is without merit.
IV. DID THE TRIAL COURT ERR IN ALLOWING, OVER OBJECTION, THE OPINION TESTIMONY OF STATE'S WITNESS, OFFICER BRETT TILLMAN, WITHOUT PRIOR DESIGNATION OF TILLMAN AS AN EXPERT AND DISCLOSURE OF HIS OPINIONS?
 ¶ 29. As discussed in the facts above, Sergeant Tillman took part in the investigation surrounding Barbara's murder. He testified to the events of December 26. The State asked Sergeant Tillman whether one would have gunpowder burns or residue on his or her hand if when a pistol, held according to David's explanation, discharges. David's counsel objected and argued that Sergeant Tillman could not testify to those matters because Sergeant Tillman was not timely disclosed as an expert witness and, thus, could not *Page 1177 
testify as an expert. The circuit court ruled that Sergeant Tillman could testify as a lay witness. David's counsel requested a continuing objection.
 ¶ 30. Sergeant Tillman went on and testified that if a pistol is fired when held by the handle, no gunpowder residue will be present on one's hand. However, if one fired a pistol and held it the way David claimed he held the .22 Derringer, there would be powder burns on one's person or clothing. On cross-examination, Sergeant Tillman testified that no residue was retrieved from David's hands.
 ¶ 31. Following Sergeant Tillman's testimony, David moved for a mistrial, based on his previous argument. The circuit court overruled that motion. In David's unsuccessful motion for new trial, David claimed that "[t]he [circuit] [c]ourt erred in allowing, over objection, . . . Officer Brett Tillman['s] testimony into evidence as to the opinion evidence of how the gun was held by the defendant. Said opinion was not previously disclosed to the Defendant." David did not mention this contention in the hearing on his motion for new trial.
 ¶ 32. On appeal, David concedes that the State disclosed that Sergeant Tillman would be a witness. However, David complains that during the State's direct examination, Tillman testified as an expert witness.
 ¶ 33. Sergeant Tillman was not qualified by the court as an expert. His opinion is only admissible then, if at all, under Mississippi Rule of Evidence 701. Rule 701 provides for limited admissibility of lay opinion testimony. Such evidence is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue. M.R.E. 701. Rule 701 does not open the door to any and all opinion testimony. Jackson, 551 So.2d at 144. A lay witness may not express an opinion on an ultimate issue. Id. He can only give an opinion that is based upon his personal perceptions, and that will help the jury fairly resolve a controverted, material fact. Id. (citing Dale, 507 So.2d at 378). The record reflects that the circuit court properly allowed Sergeant Tillman's testimony. Sergeant Tillman testified that he obtained his knowledge of firearms by way of portions of the introductory training that all law enforcement officers undertake. Thus, Sergeant Tillman's testimony was based on his experience and perception as a law enforcement officer. Tillman testified that if the barrel of a handgun is held on or near one's hand, gunpowder residue would be present on one's hand after discharge. That is how Sergeant Tillman interpreted David's explanation and demonstration of how he held the pistol when it fired. Sergeant Tillman's testimony contained both fact and opinion. It was rationally based on Sergeant Tillman's personal perceptions. Sergeant Tillman did not state his opinion of whether or not David held the pistol in the manner he claimed. Given David's accident defense, Sergeant Tillman's testimony helped the jury to determine a fact in issue, that is, whether or not the murder weapon fired accidentally, pursuant to David's version of events. Accordingly, this assignment is without merit.
V. DID THE TRIAL COURT ERR IN REFUSING THE DEFENDANT'S PROFFERED JURY INSTRUCTION D-5, SAID INSTRUCTION GIVING A JUDICIAL DEFINITION OF REASONABLE DOUBT?
 ¶ 34. David submitted jury instruction D-5, an attempt to instruct the jury on the definition of reasonable doubt. He reasoned that Mississippi courts should side with a majority of courts that allow a jury to be instructed on the definition of reasonable doubt. The circuit court recognized that in Barnes v.State *Page 1178 532 So.2d 1231 (Miss. 1988) our Mississippi Supreme Court said it is not permissible to define reasonable doubt. Based on that precedent, the circuit court denied D-5. In his motion for new trial, David argued that refusing that instruction constituted reversible error. He repeats that argument on appeal.
 ¶ 35. The trial court enjoys considerable discretion regarding the form and substance of jury instructions. Higgins v. State,725 So.2d 220 (¶ 15) (Miss. 1998). All instructions are to be read together and if the jury is fully and fairly instructed by other instructions the refusal of any similar instruction does not constitute reversal error. Laney v. State, 486 So.2d 1242
(Miss. 1986) (quoting Groseclose v. State, 440 So.2d 297 (Miss. 1983)).
 ¶ 36. "Reasonable doubt defines itself; it therefore needs no definition by the court." Barnes, 532 So.2d at 1235 (quotingBoutwell v. State, 165 Miss. 16, 143 So. 479, 483 (1932)). The record shows that jury instructions C-1, S-2, S-3, S-4, D-1, D-3, and D-4 all required that the State prove David guilty beyond a reasonable doubt before the jury would be authorized to convict. Instruction D-5 was cumulative and superfluous. The jury had been fully informed that before they could return a verdict of guilty they had to believe beyond a reasonable doubt that David was guilty. The circuit court recognized precedent, to which we are also bound. As such, there was no error.
VI. IS THE VERDICT OF THE JURY IN THIS CASE THE RESULT OF QUESTIONABLE EVIDENCE, BIAS AND PASSION ON THE PART OF THE JURY, CONTRARY TO THE LAW OF THIS STATE SO THAT IT REQUIRES REVERSAL?
 ¶ 37. In his last assignment of error, David, in effect, questions the weight and sufficiency of the evidence. David alleges that the evidence points to accident. He reasons that the jury verdict was a product of the jury's emotions and should be reversed.
 ¶ 38. David's claim of insufficient evidence is a question of pure law and is directed to the trial court's denial of his post-trial motion for directed verdict, while his claim that the verdict was against the weight of the evidence is directed to the trial court's denial of his motion for a new trial and addresses the sound discretion of the trial court. See Collier v. State,711 So.2d 458 (¶ 13) (Miss. 1998).
 ¶ 39. In challenges to the sufficiency of evidence we consider the evidence in the light most favorable to the State and all credible evidence consistent with David's guilt is accepted as true. Watson v. State, 848 So.2d 203 (¶ 33) (Miss.Ct.App. 2003). We must review all of the evidence in the light most consistent with the jury's verdict. Id. The prosecution receives the benefit of all favorable inferences that may be reasonably drawn from the evidence. Id.
 ¶ 40. However, a motion for a new trial asks this Court to vacate the judgment on grounds related to weight of the evidence, not sufficiency of the evidence. We must accept as true the evidence that supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Id. at (¶ 34). A new trial will be not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction unconscionable injustice. Id.
 ¶ 41. In either posture, we find no error in the circuit court's decisions. There was *Page 1179 
sufficient, credible evidence to support the jury's verdict. There is no question that the murder weapon was in David's hand when the gun went off. David told investigators that the pistol fired when he hit Barbara in the head. Dr. McGarry testified that Barbara died from a contact wound. The only dispute is whether the pistol went off accidentally, as David suggests.
 ¶ 42. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. Id. The jury saw David's video-taped statement in which he described the way he was holding the pistol when he struck Barbara with it. Steve Byrd testified that the gun would not fire when he tried to duplicate the scenario described in David's statement. Sean Marbra testified to a continual pattern of domestic violence.
 ¶ 43. Moreover, forensic evidence demonstrated that Barbara had four head wounds and bruises on her arms. In his interview, David testified that he hit Barbara with two pistols and that the first pistol fell apart after he hit Barbara in the head with it, so he grabbed the murder weapon and hit her in the head with that pistol as well. Even if the jury believed David's story, they could have found David responsible for Barbara's murder by using a deadly weapon in a manner likely to kill or seriously injure his victim. Hitting a person in the head with a loaded gun is enough to indicate an intent to act in an extremely dangerous manner. The jury could have been convinced that David was unreasonably indifferent to the danger he presented to Barbara. The use of a pistol, a deadly weapon, in such a manner could produce injury or even death without necessarily firing it. David did not refute this fact, and even if he had, resolution of that conflict would be a jury question. The most likely inference is that the jury did not believe David's version of the events. Whatever the jury believed, they believed that David was guilty, and they had enough evidence to convince them. Suffice to say, the evidence taken as true, combined with reasonable inferences, demonstrates that there was sufficient credible evidence to support the trial court's denial of David's motions for directed verdict and for a new trial.
 ¶ 44. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OFCONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THEMISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OFTHIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, P.J., MYERS AND CHANDLER, JJ. CONCUR. KING, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, GRIFFIS AND BARNES, JJ. ISHEE, J., NOT PARTICIPATING.