952 So.2d 945 (2006)
Lebarron Emon CHATMAN, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00031-COA.
Court of Appeals of Mississippi.
July 25, 2006.
Rehearing Denied January 23, 2007.
*946 Ross Parker Simons, attorney for appellant.
Office of the Attorney General by Jacob Ray, attorney for appellee.
Before KING, C.J., GRIFFIS and BARNES, JJ.
KING, C.J., for the Court.
¶ 1. Lebarron Emon Chatman was found guilty of depraved heart murder by a Jackson County Circuit Court Jury. Chatman now appeals, raising the following issues which we quote verbatim.
I. The State sandbagged the Defense with late-filed jury instructions giving only notice that it would attempt to secure a conviction on the theory of depraved heart murder, despite the fact that Mr. Chatman was indicted for deliberate design murder. Furthermore, permitting the State to present depraved heart murder as an *947 additional and unindicted theory of the crime violates the holding of Quick v. State.
II. The evidence in Mr. Chatman's case was sufficient to prove only manslaughter, and therefore his case should be remanded for re-sentencing under the manslaughter statutes. Additionally, the record supports the fact that this was a case of imperfect self-defense, and therefore Mr. Chatman should only have been convicted of manslaughter at most.
III. The trial court erred in permitting Dr. Paul McGarry to exceed the scope of his expertise, in allowing him to present to the jury evidence that should only have been presented by an expert in crime scene re-enaction
IV. The prosecution committed prosecutorial misconduct and violated Dawson v. Delaware with unsupported remarks and implications about putative gang affiliation directed at Mr. Chatman.
V. The sentencing dictates of Miss. Code Ann. 47-5-139 violate Mr. Chatman's equal protection rights under the Fourteenth Amendment to the United States Constitution and his corresponding rights under the Mississippi Constitution in that he will serve a much longer life sentence due to his youth, than anyone who is 50 years old or older at the time he or she is sentenced to life.
Finding no error, we affirm.

FACTS
¶ 2. On the afternoon of June 14, 2002, Chatman, Timothy Lee McGilvary, and Michael Burbage went to Anthony James' residence in Ocean Springs to inquire about a debt which James owed to Chatman's girlfriend. James explained that he did not have the money, but that he would "straighten it out." Chatman, McGilvary, and Burbage then left in McGilvary's girlfriend's car. Later that evening, Chatman and his two friends again drove past James' residence. According to Jarran Smith, who shared the residence with James and several others, when Chatman and his friends saw James outside of the house, they backed up and pulled into the driveway. Smith testified that Burbage had a bandana tied around his face, which meant that a fight was soon to occur. Smith stated that he initially armed himself with a brick, but when the men exited the vehicle and began shaking hands, he put the brick down. The subsequent events were in dispute at trial.
¶ 3. According to Smith, McGilvary exited the vehicle and began asking James for the money that was owed to the girlfriend. McGilvary then tapped on the trunk of the car, and someone inside the vehicle popped the trunk. McGilvary retrieved a 20-gauge pump shotgun from the trunk and began pointing it at James and Smith. Smith testified that McGilvary and Chatman began arguing over who was going to hold the gun, and Smith escaped by foot. Smith stated that the last thing he saw was Chatman pointing the gun at James and asking for the money. Before Smith made it to a neighbors' house to call the authorities, he heard several shots.
¶ 4. Chatman claims that he went back to talk to James about the money owed to his girlfriend, and that when James indicated that he still did not have the money, McGilvary and Burbage grabbed James from behind and began fighting him. Chatman testified that during the fight, he saw an unidentified man standing near the house "making a move for something . . . *948 as if to pull out a pistol or a weapon."[1] Chatman testified that he then fired warning shots in order to deter the unidentified man from shooting him first. He claims that James ran into the line of fire. Chatman put the gun back in the trunk, and he, McGilvary, and Burbage fled the scene. Smith and Chatman were the only eyewitnesses that testified at trial.
¶ 5. Forensic pathologist Paul McGary testified that James' cause of death was a gunshot wound to the chest which penetrated his lungs, heart, liver, stomach, and intestines and caused internal bleeding and punctures to the lungs.

ANALYSIS

Issue I
¶ 6. Chatman was indicted under Mississippi Code Annotated Section 97-3-19(1)(a) for deliberate design murder. He argues that by allowing the State to present a jury instruction on depraved heart murder, his preparation for his defense was compromised. This familiar issue has long been resolved in our state's jurisprudence. Although the structure of Section 97-3-19(1)(a) and (b) appears to create two distinct categories of murder, Mississippi case law has established that deliberate design murder and depraved heart murder have coalesced into one. Catchings v. State, 684 So.2d 591, 599 (Miss.1996) (citing Mallett v. State, 606 So.2d 1092, 1095 (Miss.1992)). Although the statutory language defining depraved heart murder does not clearly state the requirement for deliberate design or malice aforethought, depraved heart murder involves an act so reckless that malice or deliberate design is implied. Windham v. State, 602 So.2d 798, 801 (Miss.1992). Therefore, Chatman's defense was not prejudiced by the court's granting of the depraved heart murder instruction. His reliance on Quick v. State, 569 So.2d 1197 (Miss.1990), an assault case, is misplaced.

ISSUE II
¶ 7. Although not worded as such, Chatman's second issue is a challenge to the weight and sufficiency of the evidence. A verdict is legally sufficient if any rational juror could have found that the State proved each element of the crime beyond a reasonable doubt. Bush v. State, 895 So.2d 836, 843-44 (¶ 16) (Miss.2005). When reviewing a challenge to the weight of the evidence, this Court will not disturb a jury verdict unless allowing it to stand would sanction an unconscionable injustice. Id. at (¶ 18).
¶ 8. Although Chatman claimed that he did not intend to shoot anyone, he did shoot into a home where people were present, which is a textbook example of depraved heart murder. Windham, 602 So.2d at 802. The jury was instructed on manslaughter and self-defense, but returned a verdict of depraved heart murder. Testimony from both Chatman and Smith supports the jury's verdict, and allowing the verdict to stand will not sanction an unconscionable injustice. This issue is without merit.

ISSUE III
¶ 9. This court employs an abuse of discretion standard of review in determining the propriety of a trial court's decision to allow expert testimony. Marbra v. State, 904 So.2d 1169, 1176 (Miss.Ct.App. 2004) (citing Puckett v. State, 737 So.2d 322, 342 (¶ 57) (Miss.1999)). Further, this Court will not reverse a trial court's decision *949 that an expert is qualified to testify unless the expert was clearly not qualified. McGowen v. State, 859 So.2d 320, 334-35(¶ 50) (Miss.2003) (citing Duplantis v. State, 708 So.2d 1327, 1338-39(¶ 45) (Miss. 1998)).
¶ 10. Dr. Paul McGarry has taught pathology as a professor for twenty-five years. He has performed autopsies for Mississippi Gulf Coast coroners for over sixteen years, and has testified as an expert pathologist many times in Mississippi courts. McGarry opined at trial that due to the oval, rather than circular, pattern of gunshot wounds on James' chest, he was probably in an upright position, leaning forward when he was shot. McGarry went on to state, "And if he were leaning forward over that sofa that was in the picture, it would place that part of his chest. . . ." Defense counsel then objected to McGarry's speculation. The court ruled that McGarry could testify as to the position the victim was in when he was shot, but that McGarry could not speculate as to what James may or may not have been leaning over when shot.
¶ 11. Our supreme court has held that forensic pathologists may testify about wounds of the deceased. Id. at 335(¶ 53) (quoting Holland v. State, 705 So.2d 307, 341 (¶ 127)(Miss.1997)). McGarry based his opinion that James was in an upright position leaning forward when he was shot on the pattern of the gunshot wounds on his chest. We find that McGarry's expert opinion was permissible, and that the trial court did not abuse its discretion.

ISSUE IV
¶ 12. Chatman's next assignment of error involves an improper statement made by the prosecutor during closing arguments. The following exchange occurred during the State's closing argument,
Prosecutor: These guys were tough guys, ladies and gentlemen. Burbage . . ., McGilvary, and [Chatman], they thought they were tough guys, ladies and gentlemen, gang bangers, big tough guys. They're going to collect a debt like they see in the movies.
Defense: Your Honor, I'm going to object to the reference to gang bangers. There's no-there's not such a thing. I think that's very prejudicial, and I object to it.
Prosecutor: There's absolutely evidence of it, Judge. This is an indication from the witness stand, and this is a sign that people use that want to go gang bang when they approach.
The Court: I will sustain as to "gang bang," but I will find that he can reference what the witness said with respect to what that bandana meant. That's in the record.
Prosecutor: Disregard the use of that word that I just used, but y'all know what I'm talking about.
Defense: Object. He turned around-you told him not to do it, and he turned around and said, you know what I'm talking about. I object to that.
The Court: Overruled. Overruled. He clarified it as tough guys. The jury will disregard "gang bangers."
¶ 13. Attorneys are given broad latitude in making closing arguments. Wells v. State, 698 So.2d 497, 506 (Miss.1997). In determining whether a prosecutor's statements warrant a reversal, this Court must determine whether the statements created an "unjust prejudice against the accused resulting in a decision influenced by prejudice." Echols v. State, 759 So.2d 495, 498 (Miss.Ct.App. 2000) (quoting Davis v. State, 530 So.2d 694 (Miss.1988)).
*950 ¶ 14. Although defense counsel's second objection to the State's back door reference to Chatman as a gang member should have been sustained, we find that this error was harmless. The jury had ample evidence to support their verdict without the necessity of finding that the prosecutor's improper comment swayed their ultimate decision. Chatman himself testified that he fired the shots that killed James. Accordingly, we find that the improper statement made by the State did not effect the jury's finding of guilt. Notwithstanding our finding that this was harmless error, we admonish our prosecutors that this is highly improper conduct, and will not always be held to be harmless.

ISSUE V
¶ 15. Chatman's final assignement of error is that Mississippi Code Annotated § 47-5-139 violates his equal protection rights. Mississippi Code Annotated § 47-5-139(1)(a) states,
An inmate shall not be eligible for the earned time allowance if the inmate was sentenced to life imprisonment; but an inmate, except an inmate sentenced to life imprisonment for capital murder, who has reached the age of sixty-five (65) or older and who has served at least fifteen (15) years may petition the sentencing court for conditional release.
¶ 16. Chatman argues that the statute impermissibly discriminates based on age because an inmate who is fifty years or older at the time he is sentenced to life imprisonment must only serve fifteen years before he is eligible to petition the court for early release, whereas Chatman, who was twenty-five years old at the time he was sentenced to life imprisonment, must serve forty years before he will be eligible for conditional release. In Martin v. State, the supreme court found that an equal protection argument based on Mississippi Code Annotated § 47-5-139(1)(a) is not ripe for review on direct appeal. 871 So.2d 693, 702(¶ 33) (Miss.2004). Accordingly, this issue is non-justiciable.
¶ 17. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, AND ROBERTS, JJ., CONCUR. ISHEE, J., NOT PARTICIPATING.
NOTES
[1] Chatman testified that at the time of the incident he did not recognize the person he believed to be pulling out a gun. However, after seeing Smith testify at trial, Chatman said that he recognized Smith as the man he believed was about to pull out a gun.