894 So.2d 581 (2004)
James D. BOGGAN a/k/a James Douglas Boggan, Appellant
v.
STATE of Mississippi, Appellee.
No. 2002-KA-02120-COA.
Court of Appeals of Mississippi.
July 27, 2004.
Rehearing Denied November 2, 2004.
Certiorari Denied March 3, 2005.
*583 James A. Williams, Meridian, attorney for appellant.
Office of the Attorney General by Charles W. Maris, attorney for appellee.
Before SOUTHWICK, P.J., IRVING and GRIFFIS, JJ.
GRIFFIS, J., for the Court.
¶ 1. James D. Boggan was convicted of three counts of statutory rape and was sentenced to serve three concurrent thirty year terms in the custody of the Mississippi Department of Corrections. On appeal, Boggan asserts eight errors. Finding no merit to Boggan's appeal, we affirm. Because many of the issues actually fall under the same claim for relief, we combine our discussion of the related issues.

FACTS
¶ 2. Boggan, a twenty-year-old man, was indicted on three counts of statutory rape of a thirteen-year-old girl, B.K. Boggan became acquainted with B.K.'s family as a result of his close friendship with her oldest brother. Boggan was a friend, regular visitor, and occasional overnight guest of her family.
¶ 3. After B.K.'s mother noticed that Boggan acted differently around B.K., she asked Boggan not to return to their house. Shortly thereafter, B.K. and Joey, the younger of B.K.'s two older brothers, began sneaking out of their house to meet Boggan. Upon returning from the third of these meetings, B.K.'s mother caught B.K. sneaking back into the house. B.K. confessed to her mother that she had been sneaking out to see Boggan and that she had sex with Boggan on three separate occasions, during April and May of 2001.
¶ 4. At trial, B.K. testified that for a short time during April of 2001 she slept on the couch near her mother's bedroom because she was sick. Boggan awoke her on one of these nights, and they had sex on the couch. B.K. also testified that, in May of 2001, she began sneaking out of the house to meet Boggan. B.K. and Boggan used a telephone signaling scheme to know *584 when to meet. The scheme consisted of either Boggan or her calling, letting the phone ring once, and then hanging up. They would then meet afterwards. On one of these occasions, B.K. and Boggan had sex in a pasture near her house, and on the other occasion, they had sex in a barn near her house.
¶ 5. Joey testified that on one of the occasions he also met Boggan. He testified that on that occasion Boggan asked to have some time alone with B.K. to talk. He also testified regarding the phone signaling scheme.
¶ 6. Boggan testified that he stayed at B.K.'s house during April of 2001 and that he slept on the couch. However, he denied ever having sex with B.K. and denied sneaking out to meet her. According to Boggan's testimony, the reason B.K.'s mother asked him not to return to their house was because he mentioned to the mother that he may want to ask B.K. out for a date once she turned eighteen years old.
¶ 7. The jury found Boggan guilty on all three counts of statutory rape. Boggan's motion for a new trial was denied. He appeals his convictions and sentence.

ANALYSIS

I. Whether the trial court denied Boggan a fair trial, equal protection of the law, and due process.

a. Jury panel composed of over fifty percent females.
¶ 8. Boggan argues that he was denied a fair trial because over fifty percent of the jurors were female. Boggan claims that the State purposefully selected women to be on the jury and that the State's use of its peremptory challenges against males created an inference of purposeful discrimination. He argues that the trial court erred in failing to require the State to provide a non-gender reason for its peremptory challenges.
¶ 9. During jury selection, the State challenged two of the twelve eligible venire members. The court asked for objections following each challenge. In response to the first challenge, defense counsel responded: "Yes, sir. I don't know why. He never said a word. He never said a word." The court explained that he was asking if there was a gender, race, or religion objection. The defense counsel replied, "Yes, sir. He never said a word. There's no reason to." The court ruled that there was no prima facie case of racial, gender, or religious discrimination for striking the venire member. In response to the second challenge, defense counsel replied that there was no objection. The jury selection continued with Boggan exercising peremptory challenges on a female and then a male. After these challenges the jury of twelve was in place.
¶ 10. Based on our review of the jury selection, Boggan's defense counsel never voiced a gender discrimination objection to the State's use of its peremptory challenges. Defense counsel merely posed a general objection that there was no reason to challenge the first venire member. In Chase v. State, 645 So.2d 829, 843-44 (Miss.1994), our supreme court held that the failure to make a contemporaneous objection to challenges based on gender procedurally barred raising the issue on appeal. Boggan, by not raising a gender discrimination objection during jury selection, may not now raise the issue on appeal.
¶ 11. Even assuming the issue is properly before this Court, it is without merit. In order to establish a prima facie case of purposeful discrimination in jury selection a criminal defendant must show: (1) that he is a member of a "cognizable *585 racial group," (2) that the prosecutor has exercised peremptory challenges toward the elimination of venire members of his race, and (3) that the facts and circumstances raised an inference that the prosecutor used his peremptory challenges for the purpose of striking minorities. Batson v. Kentucky, 476 U.S. 79, 96, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), Lockett v. State, 517 So.2d 1346, 1349 (Miss.1987). Once the prima facie case of purposeful discrimination is met, the State is compelled to come forward with a neutral explanation. Batson, 476 U.S. at 97, 106 S.Ct. 1712, Lockett, 517 So.2d at 1349. The trial court should then determine, on the record, whether each of the State's reasons for striking minority jurors is, in fact, racially neutral. Conerly v. State, 544 So.2d 1370, 1372 (Miss.1989).
¶ 12. Although Batson, Lockett, and Conerly all concerned racial discrimination, our supreme court has held that all of the case law following Batson also applies to gender discrimination issues. Bounds v. State, 688 So.2d 1362, 1366 (Miss.1997).
¶ 13. A great deal of deference is accorded to the trial court in examining alleged discrimination when exercising peremptory challenges. Spann v. State, 771 So.2d 883, 904(¶ 61) (Miss.2000). We, as an appellate court, will not reverse factual findings relating to a Batson challenge unless they are clearly erroneous. Johnson v. State, 529 So.2d 577, 583 (Miss.1988).
¶ 14. The trial court ruled that Boggan failed to establish a prima facie case of gender discrimination. The court based this ruling on the defense counsel's failure to allege any gender discriminatory objections to the State exercising its peremptory challenges. The record supports this finding. We find no error in the trial court's ruling that Boggan failed to establish a prima facie case of gender discrimination.
¶ 15. Since the trial court ruled that Boggan failed to establish a prima facie case of gender discrimination, the court's refusal to require the State to provide a non-gender reason for its peremptory challenges was proper. This assignment of error is without merit.

b. Prejudicial comments.
¶ 16. Boggan contends that certain jury instructions constituted a comment on the evidence and thus denied him a fair trial, fundamental fairness, and due process. Although his arguments are rather confusing and rambling, the essence of Boggan's argument is that he was prejudiced by (1) the use of the word "victim" in jury instructions S-1, S-2, S-3, and S-5, (2) the use of the pronoun "her" in jury instruction S-5, (3) the judge granting the consent instruction S-5, and (4) the judge responding to a defense hearsay objection by ruling "I think it's offered for the fact that it was stated, not for the truth of the matter. Objection is overruled."
¶ 17. Since Boggan did not object to jury instructions S-1, S-2, and S-3, his claims involving these instructions are procedurally barred. Gray v. State, 728 So.2d 36, 74 (¶ 197) (Miss.1998). Boggan's attorney was specifically asked if he had an objection to instructions S-1, S-2, and S-3. He replied that he did not. Where a defendant fails to contemporaneously object to an instruction at trial, he is procedurally barred from raising the issue on appeal. Id.
¶ 18. Boggan objected to instruction S-5[1] on the grounds that the *586 instruction was unnecessarily given because he had not raised consent as a defense. Now on appeal, Boggan expands this objection and argues that the instruction constituted a comment on the evidence. In Fulgham v. State, 770 So.2d 1021, 1023(¶ 4) (Miss.Ct.App.2000), this Court ruled that "[a] defendant is procedurally barred from raising an objection on appeal that is different than that raised at trial." Accordingly, Boggan is procedurally barred from raising this issue on appeal.
¶ 19. Even had these issues been properly before this Court, they lack merit and warrant little discussion.
¶ 20. This Court has previously ruled that the use of the word "victim" in jury instructions does not constitute a comment on the evidence. Kearley v. State, 843 So.2d 66, 69(¶ 11) (Miss.Ct.App.2002). Accordingly, there was no error in granting instructions S-1, S-2 or S-3.
¶ 21. Jury instruction S-5 does not contain the word "her" as Boggan asserts. Nonetheless, we fail to see how the use of the pronoun "her" could constitute a comment on the evidence. Also, the judge's response to the defense's hearsay objection of "I think it's offered for the fact that it was stated, not for the truth of the matter" does not constitute a comment on the evidence. The response was merely a reflection of the definition of hearsay.
¶ 22. In granting the consent instruction, the trial court relied, in part, on the examining doctor's testimony. The doctor testified that the pelvic examination he performed on B.K. revealed results that would have been normal for an adult woman. He testified that, based on his examination, it was obvious that B.K. was sexually active. He testified that B.K. lacked a hymen, which is the covering of the vagina normally found in young females who are not sexually active. The defense counsel specifically questioned the doctor about whether he found any bruises, lacerations, or other injuries to B.K. that might indicate that some kind of force was used. The doctor testified that he found no such injuries.
¶ 23. Although B.K.'s testimony arguably established that she willingly had sex with Boggan, she also testified to feeling persuaded and scared. There was also testimony that, if believed, could lead the jury to conclude that B.K. was infatuated with the older Boggan. Based on this testimony and the doctor's testimony, the trial court concluded that there were sufficient facts in the record that justified giving the consent instruction.
¶ 24. Jury instructions will not be reversed if, when read as a whole, they announce the law of the case and create no injustice. Johnson v. State, 823 So.2d 582, 584(¶ 4) (Miss.Ct.App.2002). Based on the testimony presented at trial and the facts of the case, the jury instructions given in this case adequately announced the law and created no injustice. Therefore, this assignment of error is without merit.

c. State's use of leading questions to a fifteen-year-old victim.
¶ 25. Boggan claims that the State's use of leading questions to the fifteen-year-old victim[2] denied him a fair *587 trial, denied him the right to confrontation, and resulted in a failure to show proof beyond a reasonable doubt. He asserts that B.K. only testified to the three alleged acts through objectionable leading testimony.
¶ 26. The record reflects that Boggan made two leading question objections at trial. The trial court sustained the first objection. The State withdrew the second objection. The questions about which Boggan now complains were not objected to at trial, and are thus procedurally barred. We have consistently held that failure to make a contemporaneous objection bars the issue from being raised on appeal. Bozeman v. State, 836 So.2d 788, 791(¶ 11) (Miss.Ct.App.2002).
¶ 27. Assuming the issue is properly before this Court, it is without merit. Trial courts are given a great deal of discretion in permitting the use of leading questions. Whitlock v. State, 419 So.2d 200, 203 (Miss.1982). Unless there has been a manifest abuse of discretion resulting in injury to the complaining party, we will not reverse the trial judge's decision. Id. In Ivy v. State, 522 So.2d 740, 742 (Miss.1988), our supreme court held:
Both rules [M.R.E. 611(c) and F.R.E. 611(c)] acknowledge that leading questions may be necessary to develop the testimony. "Children are a classic example of the kinds of witnesses for whom leading questions may be necessary." 3 Weinstein's Evidence, para. 611[05] (1987).
¶ 28. Here, B.K. was fifteen years old at the time of trial. Given her age and the amount of discretion accorded the trial court in permitting leading questions, we find that the trial court did not abuse his discretion in allowing B.K. to testify as she did.
¶ 29. The record does not support Boggan's claim that B.K. only testified to the three alleged acts through objectionable leading testimony. Based on our review of the record, B.K. independently testified to each of the three acts. Although some leading questions were used in questioning B.K., there is colloquy in the record that reveals B.K. testified, on her own accord, to each of the three acts. This assignment of error is without merit.

d. Brother of the victim testifying without limiting instruction.
¶ 30. Boggan alleges that Joey was an accomplice, and therefore, the trial court should have given the jury a cautionary instruction about his testimony. However, Boggan did not request such an instruction during trial. In Kelly v. State, 778 So.2d 149, 152-53 (¶¶ 18-19) (Miss.Ct.App.2000), this Court declined to assign error when such an instruction was not requested. We held:
the granting of a cautionary instruction with regard to accomplice testimony is discretionary with the trial court. Wheeler v. State, 560 So.2d 171, 172 (Miss.1990). Here, no request for the instruction was made.
We are referred to a precedent that the trial court should grant a limiting instruction even when one is not requested when prior convictions are used for impeachment. Peterson v. State, 518 So.2d 632 (Miss.1987). That precedent remains controlling authority, but a similar rule has never been adopted for instructing jurors about the testimony of accomplices. We do not find similar risks to an accused in the two situations. We will not create the legal precedent that Kelly seeks.
Accordingly, there was no error in this case by the trial court not giving a cautionary instruction since no request for such *588 instruction was made. This assignment of error is without merit.

e. Hearsay evidence admitted.
¶ 31. Boggan asserts that the court erred in allowing B.K.'s mother to testify regarding B.K.'s confession that she was having sex with Boggan. He argues that this testimony is hearsay and that by allowing it into evidence the court denied him a fair trial and due process of law.
¶ 32. Once again, Boggan did not object to this testimony at trial. In Baine v. State, 606 So.2d 1076, 1079 (Miss.1992), the court ruled that the defendant's failure to object to hearsay testimony at trial, rendered the issue not preserved for appeal. We hold that Boggan has not properly preserved this issue for appeal. This assignment of error is without merit.

II. Whether Boggan's sentence was excessive and not permitted.
¶ 33. Boggan asserts that jury instructions S-1, S-2, and S-3 were peremptory because they contained the language "who was over the age of 18 years." He claims that this language in the instructions removed the issue of his age from the jury. Boggan argues that because the jury did not find that he was eighteen years old, he received an improper and excessive sentence.
¶ 34. As we discussed above, Boggan failed to object to instructions S-1, S-2, and S-3. Where a defendant fails to contemporaneously object to an instruction at trial, he is procedurally barred from raising this issue on appeal. Gray v. State, 728 So.2d 36, 74 (¶ 197) (Miss.1998). Since Boggan did not object to these instructions at trial, he may not challenge these instructions on appeal.
¶ 35. Nonetheless, this issue lacks merit. The instructions Boggan complains of merely charge the jury on the elements of statutory rape. Jury instructions will not be reversed if, when read as a whole, they announce the law of the case and create no injustice. Johnson v. State, 823 So.2d 582, 584 (Miss.Ct.App.2002). Based on our review of the record, we find that instructions S-1, S-2, and S-3, when read with the rest of the jury instructions, merely announce the law of the case and do not create an injustice.
¶ 36. Boggan was sentenced to three concurrent thirty year terms for his three statutory rape convictions. Mississippi Code Annotated Section 97-3-65(2)(c) establishes the sentencing range for a person eighteen years or older who is convicted of statutory rape. The statute provides a minimum penalty of twenty years imprisonment and a maximum penalty of life imprisonment. Id. Boggan's sentence of three concurrent thirty year terms for his three counts of statutory rape was well within the sentencing range established by statute. Sentencing that is within the limits prescribed by statute is within the complete discretion of the trial court and is not subject to appellate review. Nichols v. State, 826 So.2d 1288, 1290(¶ 10) (Miss.2002). Therefore, this assignment of error is without merit.

III. Whether Boggan received ineffective assistance of counsel.
¶ 37. Boggan identified six areas in which he claims his attorney's performance was ineffective, that his attorney: (1) failed to object to consistently material leading questions, (2) failed to object to hearsay, (3) failed to obtain a limiting instruction on accomplice testimony, (4) failed to cross-examine the doctor concerning his testimony that B.K. had a "woman's vagina," (5) failed to exercise peremptory strikes to avoid a jury that contained *589 nine women jurors, and (6) failed to object to assumptions of fact in jury instructions.
¶ 38. We find no merit in Boggan's claims of ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) his attorney's performance was substandard and (2) that a proper performance by his attorney would have caused a different result. Clemons v. State, 732 So.2d 883 (¶ 35) (Miss.1999). With respect to the overall performance of the attorney, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy." Scott v. State, 742 So.2d 1190(¶ 14) (Miss.Ct.App.1999); Cole v. State, 666 So.2d 767, 777 (Miss.1995). Attorneys are permitted wide latitude in their choice and employment of defense strategy. Hiter v. State, 660 So.2d 961, 965 (Miss.1995).
¶ 39. We find nothing in Boggan's claims which, even if accepted as true, would have the likely effect of changing the outcome of this case. Although Boggan's current counsel may have made different decisions regarding the above mentioned assigned errors, none of the alleged actions or inactions amount to ineffective assistance of counsel. We conclude that the counsel's decisions that Boggan now complains of were strategic. Given the wide latitude that is allowed attorneys in employing their defense strategy, we find that Boggan's trial counsel's performance was not ineffective. This assignment of error is without merit.

IV. Whether Boggan is entitled to a new trial.
¶ 40. Boggan asserts that he is entitled to a new trial because the evidence was insufficient to convict him. In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Dudley v. State, 719 So.2d 180, 182(¶ 8) (Miss.1998). For this Court to disturb the verdict on appeal, it must be so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Id.
¶ 41. At trial, B.K. testified that she and Boggan had sex on three occasions. She testified that one of these occasions occurred on the couch in her house. She testified that the other two occasions occurred when she had sneaked out to meet Boggan during the night. Joey testified that he accompanied his sister on one of the nights when she sneaked out to meet Boggan. He testified that he left his sister alone with Boggan on that occasion. B.K.'s mother testified that she caught B.K. sneaking into the house early in the morning following one of the occasions. She testified that B.K. confessed to her that she had been sneaking out to see Boggan and that she had had sex with him. Boggan denied having sex with B.K. and sneaking out to meet B.K.
¶ 42. After reviewing the testimony, we find that the evidence presented supported the jury's verdict of statutory rape. Accepting as true the evidence which supports the verdict, we find the circuit court did not abuse its discretion in denying a new trial. We conclude that allowing the verdict to stand does not constitute an unconscionable injustice. Therefore, this Court will not disturb the jury's verdict on appeal.
¶ 43. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF THREE COUNTS OF STATUTORY *590 RAPE AND SENTENCE OF THREE CONCURRENT THIRTY YEAR TERMS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.
NOTES
[1] Instruction S-5 reads:

The court instructs the Jury that a child under the age of fourteen (14) years is not legally capable of consenting to sexual intercourse with a person who is more than twenty four (24) months older. Consent or willingness on the part of a victim under the age of fourteen (14) years, where the Defendant is more than twenty four (24) months older is no defense to Statutory Rape.
[2] B.K. was thirteen years old when the sexual acts occurred and fifteen at the time of the trial.