ROBERTS, J.,
for the Court:
¶ 1. A jury sitting before the Harrison County Circuit Court found Jherashio Ra-mandes Hosey guilty of possession of cocaine with the intent to distribute it. During a bifurcated proceeding, the circuit court found that Hosey qualified for enhanced sentencing as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev.2007), and sentenced Hosey to thirteen years in the custody of the Mississippi Department of Corrections (MDOC). Aggrieved, Hosey appeals and raises the following seven issues: sufficiency of the evidence; weight of the evidence; whether the jury’s form of the verdict was ambiguous; exclusion of a defense witness who unexpectedly appeared during the second day of no-sey’s trial; admission of prior convictions in which Hosey was convicted for selling narcotics; admission of a law-enforcement officer’s lay opinion testimony; and cumulative effect of the errors. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. In Spring 2009, the Gulfport Police Department had a “pole camera” installed on a utility pole at the intersection of 31st Avenue and 20th Street in Gulfport, Mississippi. The camera wirelessly streamed digital video images to a secure, limited-access web site. During the afternoon of April 28, 2009, Sergeant Rob Enochs of the Gulfport Police Department watched the camera feed from his office computer. The video feed depicted a man later identi- *510 fled as Hosey conducting what Sergeant Enochs described as “hand to hand exchanges.”
¶ 3. Sergeant Enochs had Detectives Mark Joseph and Bradley Walker watch the video feed for a moment. Sergeant Enochs then asked the two detectives to make contact with Hosey to determine whether he was selling drugs. Detectives Joseph and Walker drove to the intersection in Detective Walker’s black, unmarked Dodge Durango sport utility vehicle. According to the detectives, Hosey began walking in the opposite direction when he saw the SUV approaching.
¶ 4. Detective Walker maneuvered the SUV so that Detective Joseph could exit the passenger side of the SUV near Hosey. When Detective Joseph announced that he was with the Gulfport Police Department, Hosey ran from him. According to Detective Joseph, just as he was able to grab Hosey, Hosey discarded what was later confirmed to be cocaine. Detective Joseph later testified that Hosey drew his fist back as if he was going to punch Detective Joseph. A physical altercation followed. Detective Bradley testified that he got out of the driver’s side of the SUV and helped Detective Joseph subdue Hosey. After Hosey was secured, Detective Walker found the substance Hosey has discarded. Subsequent testing revealed that the substance was .10 gram of cocaine.
¶ 5. On September 28, 2009, a Harrison County grand jury returned an indictment against Hosey charging him with possession of narcotics with the intent to distribute. Hosey waived arraignment and pled not guilty. Hosey subsequently filed a motion in limine, arguing that the prosecution should be prohibited from introducing evidence of the fact that he had prior felony convictions.[1] On the same day that Hosey filed his motion in limine, the prosecution filed a motion to amend the indictment to include a charge that Hosey was a habitual offender pursuant to section 99-19-81.
¶ 6. Hosey’s trial began on March 16, 2010. The prosecution called Sergeant Enochs as its first witness. The circuit court adjourned for the day after Sergeant Enochs testified. The next day, the prosecution called Detective Joseph, Detective Walker, and Dr. Thomas Pittman, who testified that he analyzed the substance that Detective Joseph had recovered. According to Dr. Pittman, the substance was .10 gram of cocaine.
¶ 7. Following Dr. Pittman’s testimony, the circuit court ruled on Hosey’s motion in limine. The circuit court granted Ho-sey’s motion in part. That is, the circuit court held that the prosecution would not be allowed to introduce evidence of Ho-sey’s prior convictions that did not involve the transfer or sale of narcotics. However, the circuit court also held that the prosecution would be allowed to introduce evidence of Hosey’s prior convictions involving the transfer or sale of narcotics to demonstrate that Hosey intended to transfer or sell narcotics on April 28, 2009. The circuit court noted that it would give a limiting instruction.
¶ 8. At approximately noon on the second day of Hosey’s trial, Hosey’s attorney informed the circuit court that an unexpected witness had appeared at the trial. *511 That witness, Cassie Moore, had not been subpoenaed because neither the prosecution nor Hosey’s attorney were aware that Moore was an eyewitness to the events that transpired on April 28, 2009. Outside of the presence of the jury, Hosey’s attorney proffered Moore’s testimony, which will be discussed in greater detail in the analysis portion of this opinion. In any event, the circuit court held that Moore would not be allowed to testify. Like Moore’s testimony, the circuit court’s rationale for its decision will be discussed in greater detail, below.
¶ 9. After Hosey’s proffer of Moore, the prosecution briefly re-called Detective Joseph. After Detective Joseph’s re-call testimony, the circuit court informed the jury that the prosecution and Hosey had stipulated that Hosey “was previously convicted in the Harrison County Circuit Court on two occasions for the felony of transfer of a controlled substance.” The prosecution rested its case-in-chief after the circuit court had read the stipulation to the jury.
¶ 10. Hosey then called Natasha Hands as his first witness. Hands worked at a nearby beauty salon. She testified that she was an eyewitness to the altercation between Hosey and Detectives Joseph and Walker. To summarize, Hands testified that a person who matched Detective Walker’s description got out of the driver’s side door of the unmarked SUV and “jumped on” Hosey. Hands’s testimony contrasted with that of Detective Joseph’s who testified that he — not Detective Walker — got out of the passenger-side door of the unmarked SUV before he became involved in the physical altercation with Ho-sey.
¶ 11. Hands also testified that Hosey did not throw or discard anything during the altercation. On cross-examination, Hands admitted that she did not know what Hosey was doing before she went outside of her beauty salon. She also admitted that Hosey’s hands were “balled” before Detective Joseph attempted to apprehend Hosey.
¶ 12. Hosey testified after Hands. Ho-sey denied that he had any cocaine in his possession. He further denied that he had been selling cocaine. According to Hosey, his mother had dropped him off at a carpentry trade school earlier on the morning that he was arrested, where he applied to take classes. Hosey testified that he left the carpentry trade school and got a ride from someone who dropped him off near the area where he was arrested. Regarding what he was doing in the area, Hosey’s testimony was somewhat inconsistent. When asked why he was wearing “house shoes,” Hosey testified that his brother had his other pair of shoes. Hosey further testified that his brother had had his shoes for three weeks, and he was waiting in the area because he thought that his brother might randomly drive through. However, Hosey testified that he did not know his brother’s phone number or where his brother lived.
¶ 13. Additionally, Hosey testified that he was looking for a ride to a temporary employment agency. Furthermore, Hosey testified that, contrary to all other testimony — including that of Hands, his own witness — he was arrested closer to noon than 2:30 p.m. Hosey also testified that neither Detective Joseph nor Detective Walker announced that they were law-enforcement officers before they “just start[ed] hitting [him] in the back of [his] head.” Additionally, Hosey testified that he could not have discarded cocaine in the grass because he was arrested on concrete. Hosey rested his case after he testified.
¶ 14. The prosecution called Detective Joseph again during rebuttal. Detective Joseph’s rebuttal testimony was in opposition to Hosey’s version of events. That is, *512 Detective Joseph testified that Hosey ran from him, and when Detective Joseph caught him, Hosey raised his fist as though he was going to punch Detective Joseph. The prosecution finally rested after Detective Joseph testified.
¶ 15. The next morning, the jury began deliberating at approximately 9:40 a.m. Nearly one hour later, the jury announced that it had found Hosey guilty of possession “with intent.” During a bifurcated proceeding, the circuit court found that Hosey qualified for enhanced sentencing as a habitual offender pursuant to section 99-19-81 and sentenced Hosey to thirty years in the custody of MDOC. Hosey filed unsuccessful post-trial motions for a judgment notwithstanding the verdict or, alternatively, for a new trial. However, Hosey also filed a post-trial motion to reconsider his sentence. The circuit court granted Hosey’s motion to reconsider his sentence and sentenced Hosey, still described as a habitual offender to thirteen years in the custody of the MDOC, as opposed to thirty years.[2] Aggrieved, Hosey appeals.
ANALYSIS
I. SUFFICIENCY OF THE EVIDENCE
¶ 16. Hosey claims that the evidence is insufficient to find him guilty of possession of cocaine with the intent to distribute. “In a criminal proceeding, motions for a directed verdict and [a JNOV] challenge the legal sufficiency of the evi-denee supporting the guilty verdict.” Croft v. State, 992 So.2d 1151, 1157 (¶ 24) (Miss.2008). Because a motion for a directed verdict and a motion for a JNOV both require consideration of the evidence before the trial court when the decision to grant or deny was made, this Court only reviews the ruling on the last occasion that the challenge was made. Id. (citing McClain v. State, 625 So.2d 774, 778 (Miss.1993)).
¶ 17. “A motion for a judgment notwithstanding the verdict is a challenge to the sufficiency of the evidence.” Gilbert v. State, 934 So.2d 330, 335 (¶ 9) (Miss.Ct.App.2006). As our Mississippi Supreme Court has stated:
in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for [a] directed verdict or for [a] judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.... [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Should the facts and inferences considered in a challenge to the sufficiency of *513 the evidence point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render.
Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (internal citations and quotations omitted). However, this Court will determine that there was sufficient evidence to sustain the jury’s verdict if the evidence was “of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense.” Id. (internal citations and quotations omitted).
¶ 18. Hosey argues that no one testified that he sold cocaine. Sergeant Enochs testified that he watched the video feed from the pole camera as Hosey made several hand-to-hand transactions with people. Specifically, Sergeant Enochs testified as follows:
I could see [Hosey] had his hand cupped all the time. Even when he was leaning up against the wall he had his hand cupped. I even took a picture of it that he was holding something in his hand. And when he would go up to someone, he would reach out with that hand, give them something, and would get the money with the other hand and put it in his pocket.
Detective Joseph testified that he watched the video feed from the pole camera, and he saw “several subjects walk up to [Ho-sey], make a transaction!,] and then quickly walk away.” Detective Joseph also testified that Hosey attempted to evade him and, in the process, Hosey discarded cocaine. Detective Joseph also testified that Hosey had approximately $60 when he arrested him.
¶ 19. Hosey argues that it was “just as likely that [he] was purchasing drugs or something else based on the testimony.” That might very well have been within the realm of possibilities, but resolution of that question was a matter for the jury. “Matters regarding the weight and credibility of the evidence are to be resolved by the jury.” Marbra v. State, 904 So.2d 1169, 1179 (¶ 42) (Miss.Ct.App.2004). We find no merit to this issue.
II. THE JURY’S VERDICT
¶ 20. In his second issue, Hosey claims the jury did not find him guilty of possession with intent to distribute, transfer, or sell it. Hosey’s argument is based on a constructive interpretation of the form of the jury’s verdict. The jury verdict reads as follows: “We, the jury, find the defendant, Jherashio Ramandes Ho-sey, guilty of possession of controlled substance with intent.” Hosey argues that the verdict is silent as to what that intent was.
¶ 21. During the conference on jury instructions, the prosecution and Hosey’s attorney both agreed to submit the instruction designated as instruction C-5A. That instruction reads as follows:
The Court instructs the jury that your verdict should be written on a separate piece of paper, need not be signed and may be in one of the following forms: If you find the defendant, JHERASHIO RAMANDES HOSEY, guilty of Possession of a Controlled Substance, with Intent, the form of your verdict shall be: “WE THE JURY FIND THE DEFENDANT ... GUILTY OF POSSESSION OF [A] CONTROLLED SUBSTANCE, WITH INTENT.” or
*514 If you find the defendant ... guilty of Possession of a Controlled Substance, the form of your verdict shall be:
“WE, THE JURY FIND THE DEFENDANT ... GUILTY OF POSSESSION OF [A] CONTROLLED SUBSTANCE.” or
If you find the defendant not guilty, the form of your verdict shall be:
“WE, THE JURY FIND THE DEFENDANT ... NOT GUILTY.”
According to Hosey, because the instruction omitted the specific intent referenced within it, the jury’s verdict does not reflect what Hosey’s intent was. Hosey also argues that the jury’s verdict should be interpreted merely as a finding that he was guilty of mere possession. Furthermore, Hosey notes that the prosecution did not object to instruction C-5A.
¶ 22. A more important consideration is that Hosey did not object to instruction C-5A. In fact, both the prosecution and Ho-sey’s attorney agreed to submit instruction C-5A without objection. Because Hosey did not object to instruction C-5A, he is procedurally barred from arguing that the circuit court erred when it submitted that instruction. Boggan v. State, 894 So.2d 581, 585 (¶ 17) (Miss.Ct.App.2004).
III. WEIGHT OF THE EVIDENCE
¶ 23. Next, Hosey claims the jury’s verdict is contrary to the overwhelming weight of the evidence. We are mindful that, as we review the circuit court’s decision to deny a motion for a new trial, this Court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18). The supreme court has further instructed that, when reviewing a trial court’s decision to deny a motion for a new trial:
The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, ... the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
Id. (footnote and internal citations and quotations omitted).
¶ 24. For the reasons expressed in our analysis of Hosey’s first issue, we do not find that it would sanction an unconscionable injustice to allow Hosey’s conviction to stand. Looking at the evidence in the light most favorable to the verdict, there was evidence that Hosey conducted transactions for money and that he had cocaine in his possession. We find no merit to this issue.
IV. EXCLUSION OF A DEFENSE WITNESS
¶ 25. Hosey’s fourth issue stems from the circuit court’s decision to prohibit Moore from testifying on Hosey’s behalf. Moore appeared unexpectedly at approximately noon during the second day of Ho-sey’s trial. During a proffer outside of the jury’s presence, Moore stated that “a couple of days” before that time, she had heard that her cousin, Hands, had been *515 subpoenaed. According to Moore, that was the first time she learned that Hosey was going to trial.
¶ 26. Moore explained that, like Hands, she had been at the salon at the time Hosey was arrested. Moore stated that saw a black SUV approach Hosey. She further stated that two men got out of the SUV and “jump[ed] on Hosey” as Hosey was walking down the street. Moore said that she did not know whether Hosey had discarded anything during the altercation.
¶ 27. Hosey requested that the circuit court allow Moore to testify. The prosecution objected. The circuit court held as follows:
Moore, by admission of all parties, did not appear until today at some — right before twelve o’ clock. She was obviously not produced to the [Sjtate. Her name was never divulged to the jury during voir dire.
Furthermore, a proffer was made. Ms. Moore, even though she says she saw something, she could not tell us a date, she could not tell us a location, and she could not tell us a time.
This Court rules that not only is it a discovery violation, but it’s totally irrelevant. She has nothing to offer. Therefore, her testimony will be excluded.
After a discussion between Hosey’s attorney and the circuit court, the circuit judge added, “I am not going to let the [Sjtate or the defense come in with witnesses at this time after jury selection at a time when the [Sjtate is on the verge of resting [its case]. It’s a total surprise, not only to the State, but [also] to defense counsel.”
¶ 28. Hosey claims the circuit court erred. The well-settled standard of review regarding a circuit court’s decision to exclude evidence is the familiar abuse-of-discretion standard. Troupe v. McAuley, 955 So.2d 848, 855 (¶ 19) (Miss.2007) (citing Poole ex rel. Poole v. Avara, 908 So.2d 716, 721 (¶ 8) (Miss.2005)). “A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, [this] Court will not reverse this ruling.” Shaw v. State, 915 So.2d 442, 445 (¶ 8) (Miss.2005).
¶ 29. The circuit court considered the matter of Moore’s testimony from a discovery standpoint, the ultimate facet of the circuit court’s decision to preclude the admissibility of Moore’s testimony was the circuit court’s view of Hosey’s testimony as irrelevant and cumulative. Unless Hosey’s proffer of Moore reveals that Moore’s testimony should have been admissible, there is no need to analyze the question of a discovery violation. Accordingly, we first analyze the matter of whether the circuit court erred when it held that Moore’s testimony was inadmissible because it was irrelevant.
¶ 30. “ ‘Relevant Evidence’ means evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence.” M.R.E. 401. “Evidence which is not relevant is not admissible.” M.R.E. 402. If Moore was not able to testify to any matters that tended to “make the existence of a fact that is of consequence to the determination of the action [more or less] probable,” then her testimony was irrelevant.
¶ 31. Moore testified that she was an eyewitness to Hosey’s arrest. Her proffered testimony was as follows:
there was [sic] two guys jumped [sic] out the truck. And we seen [sic] Hosey walking down the street. So the guys jumped out the truck, and one of the guys jumped out and was like — just to me he just jumped on him. Hosey was *516 like, [“]what are you hitting me for? What did I do? What did I do? [”] And he just kept hitting him, just kept hitting him, and just kept hitting him.
So the other guy got out of the truck, and I guess they think he had something. I don’t know. If he had anything, I’m not sure because I couldn’t, you know, see if he throwed [sic] anything.
During cross-examination, Moore testified that she was not paying attention to anything that Hosey was doing before she went outside. She also verified that while she was inside the salon, she was not paying attention to what was going on outside. In other words, Moore could neither verify nor deny that Hosey had been transferring narcotics before he was arrested. Furthermore, she stated that she could not see whether Hosey had discarded any narcotics while law-enforcement officers attempted to apprehend Hosey.
¶ 32. Whether Hosey possessed narcotics and whether he intended to distribute narcotics were matters that were of consequence to the determination of Ho-sey’s trial. The circuit court acted within its discretion when it concluded that Moore’s testimony did not make either one of those questions more or less probable. Consequently, the circuit court acted within its discretion when it concluded that Moore’s testimony was irrelevant. Furthermore, Hands later testified to essentially the same substantial matters after Hosey called her as a witness. Accordingly, through Hands, Hosey was able to bolster his theory of the case—which was that he neither possessed narcotics nor intended to distribute, transfer, or sell narcotics. It follows that Hosey was not unduly prejudiced by the circuit court’s decision that Moore’s testimony was irrelevant. Because the circuit court acted within its discretion, we find no merit to this assignment of error.
V. EVIDENCE OF PRIOR CONVICTIONS
¶ 83. Hosey argues that the circuit court erred when it allowed the prosecution to introduce evidence that Hosey had two prior convictions involving the transfer of a controlled substance. Hosey filed a motion in limine to exclude those prior convictions from the evidence. The circuit court found that Hosey’s prior convictions were admissible as evidence of Hosey’s intent. Specifically, the circuit court held as follows:
This court in weighing the probative value versus the prejudice, is going to rule that certainly evidence of a prior drug transaction is prejudicial to the defendant, and that prejudice, as in all cases which I have cited, does not outweigh the probative value as it relates to the issue of intent. Therefore, the Court is going to allow into evidence a conviction as it relates to [two prior convictions], both of which are dealing with transfer of a controlled substance, as to intent only provided a limiting instruction is given. The Court is going to sustain the defendant’s motion as it relates to a mere possession charge in [one prior conviction] as well as possession of a weapon after [sic] a convicted felon....
¶ 34. “It is settled in Mississippi jurisprudence that under [Mississippi Rule of Evidence] 404(b) evidence of prior sales is admissible to show or prove intent to distribute.” Mitchell v. State, 754 So.2d 519, 524 (¶ 16) (Miss.Ct.App.1999) (citing Swington v. State, 742 So.2d 1106, 1112 (¶ 16) (Miss.1999)). Furthermore, the circuit court instructed the jury pursuant to the jury instruction designated as instruction C-10A, which reads as follows:
*517 The Court instructs the jury that evidence of prior convictions of Transfer of Controlled Substance by the defendant on previous occasions, is offered in an effort to show intent regarding the defendant. ... In other words, if you find beyond a reasonable doubt that [Hosey] possessed cocaine on the date alleged, then you may consider evidence of prior convictions of Transfer of Controlled Substance in determining whether [Ho-sey] possessed the cocaine with the intent to distribute or sell it, giving such evidence whatever weight, worth, and credibility, if any, you think it deserves for that purpose.
Accordingly, the circuit court acted within its discretion when it allowed the prosecution to introduce evidence of Hosey’s two prior convictions for possession of narcotics with the intent to distribute, transfer, or sell them. It follows that we find no merit to this assignment of error.
VI. OPINION TESTIMONY
¶ 35. Next, Hosey argues that the circuit court erred when it allowed Sergeant Enochs to testify that, based on his observation of the events depicted in the video feed from the pole camera, it was his opinion that Hosey was transferring or selling drugs. Noting that the prosecution did not qualify Sergeant Enochs as an expert witness, Hosey argues that the circuit court erred in allowing the prosecution to elicit inadmissible lay opinion testimony from Sergeant Enochs.
¶ 36. Mississippi Rule of Evidence 701 provides as follows:
If the witness is not testifying as an expert the witness’s testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of [Mississippi Rule of Evidence] 702.
According to Hosey, “[i]nstead of limiting his testimony to what his observations were, however, [Sergeant] Enochs actually testified over objections, about his conclusions and opinion.” Hosey references three pages of the record in which he claims that Sergeant Enochs improperly testified to his opinions on matters that were outside the acceptable scope of lay witness opinion testimony. Within those three pages of the record, the only matter to which Sergeant Enochs offered an opinion was his opinion that, based on his observation of Hosey’s behavior via the video feed from the pole camera, it was necessary to send two detectives to contact Hosey. Sergeant Enochs did not testify that, in his opinion, Hosey was selling narcotics. More accurately, Sergeant Enochs testified that, in his opinion, it was necessary to send two detectives to determine whether Hosey was selling narcotics.
¶ 37. A lay witness may not express an opinion on an ultimate issue. Marbra, 904 So.2d at 1174 (¶ 15) (citing Jackson v. State, 551 So.2d 132, 144 (Miss. 1989)). Furthermore, a lay witness may testify regarding an opinion “that is based upon his personal perceptions, and that will help the jury fairly resolve a controverted, material fact.” Id. Sergeant En-ochs did not express an opinion on the ultimate issue. He did not opine that Ho-sey was selling narcotics. At best, he opined that, based on his observations, it was necessary to dispatch law-enforcement officers to further investigate behavior that he considered suspicious. Furthermore, Sergeant Enochs’s testimony was necessary to frame the narrative of events that led to the Gulfport Police Depart- *518 merit’s interaction with Hosey. We find no merit to this assignment of error.
VII. CUMULATIVE EFFECT OF ERRORS
¶ 38. Hosey claims that this Court should grant him a new trial based on the cumulative effect of the errors. “[IJndivid-ual errors, not reversible in themselves, may combine with other errors to make up reversible error.” Wilburn v. State, 608 So.2d 702, 705 (Miss.1992) (citing Hansen v. State, 592 So.2d 114, 142 (Miss.1991)). However, we find no error present in this case, much less a cumulative effect of those non-existent errors. It follows that we find no merit to this issue.
¶ 39. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE AND SENTENCE AS A HABITUAL OFFENDER OF THIRTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. RUSSELL, J., NOT PARTICIPATING.

. On June 3, 1996, Hosey was convicted of possession of a controlled substance and sentenced to three years in the custody of the MDOC. That same day, Hosey was also convicted of two counts of transfer of a controlled substance and sentenced to ten years in the custody of the MDOC on both counts. Finally, on September 10, 2007, Hosey was convicted of possession of a firearm by a former convicted felon and sentenced to eighteen months in the custody of the MDOC.

. Section 99-19-81 requires that a person who qualifies for enhanced sentencing as a habitual offender pursuant to that section must be sentenced to the maximum possible sentence for any subsequent crimes. The maximum possible sentence for possession of cocaine with intent to distribute is thirty years in the custody of the MDOC. Miss. Code Ann. § 41-29-139(b)(1) (Rev.2009). When the circuit court granted Hosey's motion to reconsider his sentence, the circuit court reduced Hosey’s sentence from thirty years to thirteen years in the custody of the MDOC. The circuit court did so without performing the proportionality analysis required by Solem v. Helm, 463 U.S. 777, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). However, the State has neither appealed nor cross-appealed the circuit court’s decision. Accordingly, the legality of Hosey’s sentence is not an issue that is presently before this Court.