BARNES, J.,
for the Court:
¶ 1. Kevin Reynolds a/k/a Muhamad Ali was convicted for the murder of Kevin Vandrell (Count I) and possession of a weapon by a felon (Count II). He was sentenced as a habitual offender to life for Count I and ten years for Count II, with the sentences to be served concurrently in the custody of the Mississippi Department of Corrections (MDOC), with credit for time served. Reynolds now appeals his convictions, and finding no error, we affirm.
*455 FACTS AND PROCEDURAL HISTORY
¶ 2. On August 31, 2011, Reynolds and an acquaintance, David Gross, went to the home of Kevin Vandrell, another acquaintance of Reynolds’s. Vandrell was alone, cooking dinner, when Reynolds knocked on the door and proceeded to walk inside before Vandrell could answer the door. This action angered Vandrell and prompted a heated disagreement between the two men, since this was not the first time that Reynolds had burst into Vandrell’s home unannounced. Vandrell ordered the men to leave. According to Gross, Vandrell followed them outside, “eall[ed Reynolds] the N word,” and fired a shot from a rifle into the air. After the two men had departed, Vandrell went to his neighbor’s house. The neighbor, Jules Ouder, said Vandrell was angry and upset and was carrying a “semi-automatic” rifle. Ouder also said that Vandrell was fearful for his life because “[Reynolds] told [Vandrell] you have not seen or heard the last of me.”
¶ 8. The following morning, Vandrell’s mother went to his house to pick up his mail, as was her normal routine, and noted that it did not appear he had left for work. Vandrell’s door was unlocked; so she went inside to investigate. She discovered Vandrell’s deceased body, with a gunshot wound to the head, and contacted law enforcement. In the meantime, Reynolds had repeatedly attempted to call Ouder that morning, but Ouder did not answer his phone until the third time. At that point, Ouder was unaware that Vandrell had been killed. Reynolds asked Ouder if he had seen Vandrell; Ouder said that he had not. Reynolds continued to call Ouder throughout the day, but Ouder refused to answer the calls once he learned about Vandrell’s death.
¶ 4. After speaking with Ouder, the Pearl River County Sheriffs Department determined that Reynolds was a person of interest. Two detectives, Scott Wagner and Shane Edgar, went to Reynolds’s home to question him. Initially, Reynolds acted as if he did not know Vandrell but eventually admitted that he knew the victim. During the questioning, Detective Edgar noted that Reynolds was “overly friendly,” but appeared “very nervous.” He also observed a paper plate nailed to a wooden post in Reynolds’s yard that appeared to have been used for target practice. Detective Edgar later testified that the holes in the plate “were about the size of a .22 caliber rifle round.” Law enforcement obtained a search warrant for Reynolds’s residence and arrested Reynolds upon returning, when he was uncooperative in granting them access to his property and acting in “an aggressive manner.” A “.22 caliber Marlin rifle” was seized from Reynolds’s home. It was later determined that Vandrell had been killed by a distant gunshot wound to the head. No projectile was recovered from the body, but a .22-caliber cartridge casing was found in Vandrell’s bedroom.
¶ 5. On December 7, 2011, Reynolds was charged for Count I, murder, and Count II, possession of a firearm by a felon. A jury trial was held August 13-15, 2012. At trial, Gross testified that, on August 31, he had taken Reynolds to run errands, and that he and Reynolds stopped at Vandrell’s home that evening. Reynolds and Vand-rell had an argument, and when Gross and Reynolds were leaving, Vandrell ran after them with a rifle that he pointed upwards, firing a shot into the air. Reynolds persuaded Gross to take him back to Vand-rell’s later that night; Reynolds took a rifle with him. Gross parked a block away and stayed in his truck. Gross claimed that Reynolds then got out of the truck, grabbed his rifle from the back, and went toward Vandrell’s home. Reynolds re *456 turned approximately fifteen minutes later and screamed at Gross, “What did you see? What did you hear?” Gross said he did not hear or see anything and pretended that he had been sleeping. The two men left and returned to Reynolds’s home. Ouder also testified regarding Yandrell’s anxious state of mind, that evening over his argument with Reynolds.
¶ 6. Reynolds was convicted on both counts. For Count I, Reynolds was sentenced to life, as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007), without eligibility for parole or probation; for Count II, he was sentenced to ten years. The sentences were ordered to be served concurrently in the custody of the MDOC, with credit for time served. Reynolds was also ordered to pay a fine of $1,000 and $1,585 in restitution to the Mississippi Crime Victims’ Compensation Program.
¶ 7. Reynolds filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The circuit court denied the motion, and Reynolds now appeals. Finding no error, we affirm.
DISCUSSION
I. Whether defense counsel’s performance constituted ineffective assistance of counsel.
¶ 8. Reynolds argues that his counsel rendered ineffective assistance by failing to: (1) stipulate to a prior conviction; (2) object to additional evidence of other bad acts; and (3) object to the submission of a “mis-worded and misleading circumstantial evidence” jury instruction.
¶ 9. For a defendant to prove a claim of ineffective assistance of counsel, he must show: “(1) his counsel’s performance was deficient, and (2) this deficiency prejudiced his defense.” Whitfield v. State, 105 So.3d 385, 389 (¶ 16) (Miss.Ct.App.2012) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). “There is a strong presumption that a counsel’s performance falls within the range of reasonable professional assistance.” Collins v. State, 70 So.3d 1144, 1147 (¶ 16) (Miss.Ct.App.2011) (citing Strickland, 466 U.S. at 689, 104 S.Ct. 2052). “To overcome this presumption, ‘the defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ ” Id. (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
¶ 10. Generally, a claim of ineffective assistance of counsel will only be addressed on direct appeal when “(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.” Gill v. State, 126 So.3d 128, 133-34 (¶ 27) (Miss.Ct.App.2013) (quoting Colenburg v. State, 735 So.2d 1099, 1101 (¶ 5) (Miss.Ct.App.1999)).
The question presented is not whether trial counsel was or was not ineffective but whether the trial judge, as a matter of law, had a duty to declare a mistrial or to order a new trial sua sponte on the basis of trial counsel’s performance. “Inadequacy of counsel” refers to representation that is so lacking in competence that the trial judge has the duty to correct it so as to prevent a mockery of justice.
Id. at 134 (¶ 27) (quoting Colenburg, 735 So.2d at 1102 (¶ 8)). “Review of an ineffective-assistance-of-counsel claim on direct appeal is ‘confined strictly to the record.’ ” Id. (quoting Colenburg, 735 So.2d at 1102 (¶ 6)).
*457 ¶ 11. Reynolds argues that defense counsel failed to object to evidence presented that he claims showed that he was “a persistent bad actor.” First, he notes testimony and evidence provided by the Louisiana Department of Corrections records custodian that established Reynolds as a habitual offender. Reynolds contends that defense counsel should have stipulated to his prior felony conviction. However, the record clearly shows that defense counsel objected to the admission of this evidence, claiming that it was not the best evidence. Furthermore, counsel was under no duty to stipulate to Reynolds’s prior conviction. This Court addressed this same issue in Williams v. State, 819 So.2d 532, 538 (¶ 18) (Miss.Ct.App.2001), concluding:
Counsel could easily have seen a stipulation as running counter to her trial strategy. The record clearly shows that the only evidence elicited from the past conviction reports dealt with the type and date each crime was committed. These facts would have had to have been admitted to prove an element of the charge “felon in possession of a firearm.” Even if counsel had objected to the admission of this evidence, it would have justifiably been overruled. More importantly, counsel may have felt that a stipulation to these crimes would have given the jury the impression that the defendant had some reason to hide facts of the prior cases from them. “There is a strong, yet rebuttable, presumption that the actions by defense counsel are reasonably strategic.” The Appellant has not rebutted this presumption.
“Counsel’s decisions whether or not to file motions, call certain witnesses, ask certain questions, and make certain objections fall within the definition of trial strategy”; thus, these decisions do not amount to ineffective assistance of counsel. Pittman v. State, 121 So.3d 253, 258 (¶ 14) (Miss.Ct. App.2013) (citations omitted). We find Reynolds has failed to. rebut the presumption that counsel’s decision not to stipulate to the prior conviction was “reasonably strategic.”
¶ 12. Reynolds also alleges that defense counsel should have objected to Butch Rab/s testimony that Reynolds had “been in our jail.” Raby was a custodian of records for the Pearl River County Sheriffs Department and was called at trial to identify Reynolds. He did not testify as to any prior convictions. Again, the failure to object to such testimony falls under trial strategy and does not constitute ineffective assistance of counsel.
¶ 13. Reynolds also argues that his counsel’s performance was ineffective because counsel submitted, and was granted, an erroneous circumstantial-evidence jury instruction. However, as we will discuss in further detail below, the jury instruction was a correct statement of the law; consequently, its submission did not render counsel’s performance deficient.
¶ 14. Upon review, we find nothing in the record to indicate any obvious deficiencies by defense counsel. Therefore, this issue is without merit.
II. Whether the circuit court erred in giving a circumstantial-evidence instruction.
¶ 15. Reynolds claimed that it was error for the circuit court to give Jury Instruction 5, a circumstantial-evidence instruction, which stated:
The Court instructs the Jury that if the State has relied on circumstantial evidence to establish its theory of guilt of the Defendant, either as to Count One or Count Two of the Indictment, then the evidence for the State must be so strong as to establish the guilt of the Defendant, not only beyond a reasonable *458 doubt, but the evidence must be so strong as to exclude every other reasonable hypothesis other than that of guilt.
Reynolds asserts the instruction submitted “was confusing, an inaccurate statement of the law, and placed the burden on the jury to determine whether the case was indeed a circumstantial case.” He further contends: “Aside from the notion that whether a case is premised solely on circumstantial evidence is a matter of law and therefore the domain of the trial judge, the jury [was] given no definition, nor instruction, to aid it making such a determination.”
¶ 16. Since Jury Instruction 5 was submitted by the defense, there was no objection to this jury instruction at trial. “[An a]ppellant has no standing to seek redress from an alleged error of his own creation.” Craft v. State, 970 So.2d 178, 182 (¶ 10) (Miss.Ct.App.2007) (quoting Evans v. State, 547 So.2d 38, 40 (Miss.1989)). Accordingly, this issue is proee-durally barred from review.
¶ 17. Moreover, Reynolds has failed to provide any support for his contention that Jury Instruction 5 was an improper circumstantial-evidence instruction and “misstated the law.” Although he claims that the wording of the circumstantial-evidence instruction has been refused by trial courts, he acknowledges that those cases were found not to be circumstantial, “the proof having either direct evidence or a confession/admission.” Furthermore, the model instruction for circumstantial evidence states:
The court instructs the jury that if the State has relied on circumstantial evidence to establish its theory of guilt of the defendant, then the evidence for the State must be so strong as to establish the guilt of the defendant, not only beyond a reasonable doubt, but the evidence must be so strong as to exclude every other reasonable hypothesis other than that of guilt.
Mississippi Model Jury Instructions: Criminal § 1.18 (2018). Notwithstanding the specific language relating to the individual counts, this model language is identical to the language contained in Jury Instruction 5.
¶ 18. Upon review, we find Jury Instruction 5 was a proper circumstantial-evidence instruction under the law. The Mississippi Supreme Court has held:
[W]here the evidence for the prosecution is wholly circumstantial in nature, the accused is entitled upon request to have the jury instructed that, before they may convict, they must find that each element of the offense has been established beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence.
Keys v. State, 478 So.2d 266, 267 (Miss.1985). A circumstantial-evidence instruction “must be given only where the prosecution is without a confession and wholly without eyewitnesses to the gravamen of the offense charged.” Id. Reynolds did not provide any confession and, while Gross did see Reynolds leave his truck with a gun, he was not an eyewitness to Vandrell’s murder.
¶ 19. We find no merit to Reynolds’s claim that the jury was improperly instructed.
III. Whether the circuit court erred in allowing inadmissible hearsay evidence to be presented to the jury.
¶ 20. Reynolds argues that Ouder’s testimony regarding what Vand-rell told him the night before his death “exceeded the scope of the exception to the hearsay rule by permitting hearsay within hearsay and opinion testimony from the witness.” The State claims that this issue is barred from appellate review due to the *459 failure to object to Ouder’s testimony. See Jackson v. State, 832 So.2d 579, 581 (¶ 3) (Miss.Ct.App.2002) (“Failure to object at trial acts as a procedural bar in an appeal.” (citing Carr v. State, 655 So.2d 824, 853 (Miss.1995))). However, the record shows that defense counsel did assert a continuing objection to the line of questioning regarding what Vandrell had related to Ouder. The trial judge ruled that while Ouder’s testimony was hearsay, it was admissible because it went “to [Vandrell’s] then existing mental frame of mind or his present sense impression[.]” Thus, it fell under the hearsay exception of Mississippi Rule of Evidence 803(3).[1]
¶ 21. We will not reverse a circuit court’s ruling on the admission or exclusion of evidence unless the court abused its discretion. Davis v. State, 904 So.2d 1212, 1215 (¶ 7) (Miss.Ct.App.2004) (citations omitted). At trial, Ouder testified: “[Vandrell] said this white guy [, Gross,] tried to get in between them and keep them apart and was telling them, you know, sit down[,] let’s smoke a cigarette, you know[,] let’s talk this out, stuff like that.” Reynolds claims this testimony constituted hearsay within hearsay because it related what Vandrell said to Ouder regarding Gross’s statements during the altercation.
¶ 22. “Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.” M.R.E. 805. We find no merit to this claim by Reynolds, since Gross’s statement, as related by Ouder, did not constitute hearsay. “[T]o be deemed hearsay, the purpose of the testimony must be for the truth of the matter asserted.” Hobgood v. State, 926 So.2d 847, 853 (¶ 16) (Miss.2006). Ouder did not relay Gross’s statement to prove that Gross attempted to calm the situation between Reynolds and Vandrell; it was given to show that the two men had argued and that Vandrell was upset and frightened. Moreover, Gross testified at trial and reiterated what Ouder stated — that he stepped between Vandrell and Reynolds, attempting to keep peace between the two men. Consequently, we find that there was no “hearsay with hearsay” issue; but if there was, any error would be harmless, as Gross testified to the same event at trial.
¶ 23. Reynolds also claims Ouder’s testimony that Vandrell was in fear for his life was “simply speculation” and that it was inadmissible opinion testimony. Mississippi Rule of Evidence 701 provides:
If the witness is not testifying as an expert, the witness’s testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of [Mississippi Rule of Evidence] 702.
“[A] lay witness may testify regarding an opinion ‘that is based upon his personal perceptions, and that will help the jury fairly resolve a controverted, material fact.’ ” Hosey v. State, 77 So.3d 507, 517 (¶ 37) (Miss.Ct.App.2011) (quoting Marbra v. State, 904 So.2d 1169, 1174 (¶ 15) (Miss.Ct.App.2004)).
¶ 24. We observe that defense counsel did not make a specific objection on this ground, which would bar this particular assignment of error from review. Regardless, we find no merit to Reynolds’s argu *460 ment. At trial, Ouder testified that Vand-rell came to his home after the argument with Reynolds and that Vandrell was carrying a rifle and concerned for his own safety. Ouder’s statement that Vandrell “feared for himself’ was rationally based on Ouder’s perception at the time. Ouder saw Vandrell with a gun, and Vandrell explained that he had the gun because he and Reynolds had argued. Ouder testified: “And I believe that’s why he was carrying a weapon because of the threat [by Reynolds.]” Therefore, Ouder’s testimony was admissible as lay opinion testimony, and we find no abuse of discretion by the circuit court in admitting the testimony.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIVER COUNTY OF CONVICTION OF COUNT I, MURDER, AND COUNT II, POSSESSION OF A WEAPON BY A CONVICTED FELON, AND SENTENCE AS A HABITUAL OFFENDER OF LIFE, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, FOR COUNT I, AND TEN YEARS FOR COUNT II, WITH THE SENTENCES TO BE SERVED CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CREDIT FOR TIME SERVED; TO PAY A FINE OF $1,000; AND TO PAY $1,585 IN RESTITUTION TO THE MISSISSIPPI CRIME VICTIMS’ COMPENSATION PROGRAM, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PEARL RIVER COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ„ CONCUR.

. Mississippi Rule of Evidence 803(3) says that "[a] statement of the declarant’s then existing state of mind, emotion, sensation, or physical condition” is not excluded by the hearsay rule.